STATE OF NEBRASKA, APPELLEE, V. MELVIN ISLEY, APPELLANT.
239 N. W. 2d 262

Filed March 4, 1976. No. 40166.

Padley & Dudden, for appellant.

Paul L. Douglas, Attorney General, and Paul W. Snyder, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

The defendant was found guilty of manslaughter after a trial before a jury and sentenced by the District Court to the Nebraska Penal and Correctional Complex for a period of 3 to 5 years. The defendant appeals that conviction. We affirm the judgment of the District Court.

The defendant was convicted of manslaughter in connection with the death of Fred C. Roberts, Jr. On March 11, 1974, Roberts entered the Sahara Lounge and was seated at the bar. The manager of the bar apparently asked that Roberts be removed from the Sahara Lounge because he was drunk and was using obscene language. The defendant grabbed Roberts from the bar stool and dragged him out of the premises. One witness testified that she saw the defendant pull Roberts' shirt off outside the bar, and as Roberts attempted to flee, the defendant chased after him. Three other witnesses testified that the defendant remained outside of the building for 3 to 5 minutes before returning. These same three witnesses also testified that the defendant, upon his return, boasted that Roberts would not cause any more trouble because the defendant had "just beat his brains in," or that "he had broke his neck."

Roberts' unconscious body was found on the ground outside the bar. He died 3 days later from massive head injuries. The jury found the defendant guilty of manslaughter and the District Court gave the defendant a sentence of 3 to 5 years.

The defendant's first contention on appeal is that there was not sufficient evidence to support a jury verdict of guilty. We do not agree. This court stated in State v. Combs, 192 Neb. 551, 222 N. W. 2d 833: "After a jury has considered all the evidence and returned a verdict of guilty, that verdict may not, as a matter of

law, be set aside on appeal for insufficiency of evidence, if the evidence sustains some rational theory of guilt." There was clearly sufficient evidence before the jury to sustain a rational theory of guilt. Numerous witnesses testified that the defendant dragged the victim, Roberts, out of the bar. Three witnesses testified that the defendant remained outside for 3 to 5 minutes, a period of time long enough to inflict the beating. The same three witnesses also testified that they heard the defendant admit he had severely beaten the victim. Another witness testified that she saw the defendant . chasing Roberts outside. The above testimony easily sustains a rational theory of guilt.

The defendant's next contention is that the District Court erred in refusing to grant a new trial on the basis of jury misconduct. In support of the defendant's motion for a new trial, the defendant's attorney, Mr. Padley, submitted his own affidavit which revealed that an alternate juror had told Mr. Padley, while in the presence of the District Court Judge, that during the course of the trial the jurors had discussed the witnesses during recesses and had expressed opinions relating to the credibility of witnesses and the conflicts in the testimony. The jury, if in fact it discussed the case outside the courtroom, did act improperly. The District Court had admonished the jury not to discuss the case during recesses. However, in order for jury misconduct to be the basis for a new trial, the misconduct must be prejudicial to the defendant. See Williams v. State, 115 Neb. 277, 212 N. W. 606. If there was jury misconduct in this case, there is no evidence that the defendant was prejudiced by such misconduct. In fact, in Mr. Padley's affidavit, he states that the alternate juror said that, "it would be difficult to conclude how the jurors would decide the case in view of the conversations which he had overheard." Thus, there is no indication that any of the jurors had made up their minds as to the defendant's guilt or innocence prior to the conclusion of

the trial. No prejudice to the defendant has been shown, and therefore the District Court was correct in denying the defendant's motion for a new trial based on jury misconduct.

The defendant next contends that the District Court erred in refusing to allow Cathy Tucker, a bartender at the Sahara Lounge, to testify as to the contents of an alleged conversation with Mike Slankard. Slankard, called by the defendant, testified that he was not at the Sahara Lounge at the time of the incident, and that he did not witness the attack on Mr. Roberts. Cathy Tucker was then called as a witness by the defendant, and she testified that Slankard had told her he had pulled into the parking lot at the Sahara Lounge at the time of the incident. When the defendant's attorney asked Cathy Tucker what Slankard had told her that he had seen, the prosecutor objected to the question as calling for hearsay. The District Court sustained the objection. The defendant made an offer of proof to the effect that Cathy Tucker would testify that Slankard had told her that he saw the attack and the defendant was not one of the assailants. We agree with the District Court that the testimony of Cathy Tucker relating to what Slankard told her was inadmissible.

It is true that in Nebraska, prior inconsistent statements of a witness are admissible. However, these hearsay statements are admissible only as impeachment evidence, not as substantive evidence. As stated in Texter v. State, 170 Neb. 426, 102 N. W. 2d 655: " 'Proof of contradictory statements of a witness is received not as evidence of the facts declared, * * * but for the purpose only of aiding the jury in estimating the *credibility* of the witness. * * * "A witness may be impeached by showing that he made statements *out of court contrary to those made in court* in regard to some matters relative to the issue. * * * Such declarations are not substantive evidence of the fact declared, * * *." ' " (Emphasis supplied.)

In State v. Witmer, 174 Neb. 449, 118 N. W. 2d 510, this court held as follows: "The impeachment of a witness by showing contradictory statements made by him is admitted solely for the purpose of discrediting the reliability of the witness; it is not substantive evidence of the facts stated [in the impeaching testimony]." See the same holding in Insurance Co. of North America v. Omaha Paper Stock, Inc., 189 Neb. 232, 202 N. W. 2d 188.

Slankard was impeached as to all the direct testimony he gave when Cathy Tucker testified he told her (at a subsequent time) that he was in the Sahara Lounge parking lot at the time of the incident. Slankard's testimony that he was not there was therefore impeached. The only possible result in admitting *further* Tucker hearsay testimony as to what Slankard told her would be to influence the jury as to the truth of the facts "believed" to be present in the offer of proof as to Tucker's testimony. But Slankard never testified as to any conversation. The offer of proof (outside of stating he was not there) contains nothing contrary to the testimony that he gave in court. It is an attempt to offer hearsay proof of substantive facts under the guise of impeachment testimony. This cannot be permitted. Even in the defendant's brief, his theory is that the alleged conversation should be admitted so as to factually prove to the jury that the defendant was not the assailant. It is clearly not admissible, and on the other hand demonstrates the necessity to protect a jury trial from the danger of manufactured and unreliable testimony as to conversations out of court, not under oath, and by witnesses not parties to the case.

It should be noted that the testimony of Cathy Tucker relating to her conversation with Slankard would also be inadmissible as substantive evidence under the new Nebraska Evidence Rules, which are now in effect. See section 27-801 (4)(a)(i), R. S. Supp., 1975, which makes admissible prior inconsistent statements of a wit-

ness only if the prior statement was given under oath.

The defendant's final contention is that the District Court erroneously refused to order the State of Nebraska to turn over to the defendant certain documents. More specifically, the defendant argues that he was entitled to the statements given to the police by Jack Shelton and Theron Shelton, and to a police report, taken by an officer at the scene of the incident which contained a description of the assailant.

As for the statements given to the police by Jack and Theron Shelton, the defendant cannot claim that he was prejudiced by the District Court's denial of his request to view the statements prior to trial. In fact, upon cross-examination of Theron Shelton, the defendant's attorney was given a copy of both Theron Shelton's and Jack Shelton's prior statements. The District Court gave the defendant's attorney, Mr. Padley, a recess for the purpose of reviewing the statements. Cross-examination continued by Mr. Padley after the recess. Since Mr. Padley was given the statements of the Shelton brothers during the trial, the denial of access to these statements prior to trial did not in any way prejudice the rights of the defendant.

As to the police report, the pertinent portion requested by defendant was based on interviews with three witnesses, the two Shelton brothers and one other witness. The Shelton brothers did not sign the report, and it did not contain any direct statements of either Jack or Theron Shelton. Thus, the police report could not have been of any help in impeaching either of the Shelton brothers' testimony. Moreover, the contents of the police report are generally consistent with the Shelton brothers' testimony. We see no prejudice.

In addition, in a criminal case, the trial court is vested with broad discretion in considering discovery requests of defense counsel and error can be predicated only upon an abuse of such discretion. In Cramer v. State, 145 Neb. 88, 15 N. W. 2d 323, this court said: "* * * the

trial court has a broad judicial discretion and it is only when such discretion is abused that error can be based thereon." It is clear that there was no abuse of discretion in denying the defendant the police report or the statements of the Shelton brothers.

The judgment and sentence of the District Court is correct and is affirmed.

AFFIRMED.