STATE OF NEBRASKA, APPELLEE, v. DAVID M. ANDERSON, APPELLANT.

281 N. W. 2d 743

Filed July 24, 1979. No. 42344.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Marilyn B. Hutchinson, for appellee.

Heard before Krivosha, C. J., Boslaugh, McCown, Clinton, Brodkey, White, and Hastings, JJ.

Clinton, J.

Defendant Anderson was found guilty by a jury of robbery and was sentenced to a term of 5 to 7 years in the Nebraska Penal and Correctional Complex. On appeal to this court, the only error assigned is that the trial court erred in denying the defendant's motion to suppress certain evidence consisting of a sum of currency and coins, a "cake-cutter" comb with a green handle, and a pair of horn-rimmed sunglasses which were found upon the person of the defendant at the time of his apprehension and later taken from him by police officers. The bases of the motion are that the search and seizure were not supported by facts which gave rise to probable cause for the search, and the search was not incident to a lawful arrest. We affirm.

The evidence adduced at the suppression hearing

and at trial would permit the triers of fact to find as fact those evidentiary matters hereafter discussed. Unless otherwise indicated in the later discussion, the facts are without dispute.

On June 21, 1978, at approximately 10:45 a.m., an armed robber pointed a handgun at the attendant of the Sinclair service station at 69th and Dodge Streets in Omaha, Nebraska, and took a sum of money which the attendant carried on his person for use in making change in the course of serving customers. At approximately 11 a.m., notification of the robbery was broadcast on the police radio and a number of officers in cruiser cars converged toward the scene. One of these officers was Kenneth R. Tyler, who was at 60th and Lake Streets at the time he received the call. Officer Tyler was apparently informed that the robber was an armed, black male about 25 years of age, 5 feet 6 inches tall, weighing about 120 pounds, dressed in dark-colored pants, and wearing a reddish shirt. Upon receiving this information, Tyler drove to 66th Street and started south toward the robbery scene. It is inferable from the testimony that Tyler had been informed that the robber left the station on foot and was northbound.

Shortly thereafter, Tyler reached the intersection of 66th and Burt Streets, which is about 10 or 11 blocks from the Sinclair station in question, and saw the defendant, a black male, walking northward on the west side of 66th Street. Tyler knew this area was an entirely or predominantly white neighborhood and that the nearest mixed race neighborhood was a considerable distance away. Tyler observed that this individual matched the broadcast description of the robber in all respects except he wore no shirt and was bare from the waist up. In one hand, the defendant carried a white cloth or article of clothing, later determined to be a thermal shirt, which was draped over an object held in the defendant's hand. The object was somewhat larger than

a person's hand, and Tyler suspected it was a gun.

As Tyler passed the defendant, the defendant looked back over his shoulder several times and then turned west on Cuming Street. At that time Tyler decided to turn his cruiser about and did so. In the meantime the defendant had disappeared from Tyler's view. By the time Tyler had completed his turn, the defendant had changed direction and was walking east on Cuming Street and then turned north on 66th Street again. Tyler observed that, although the defendant still held the shirt in his hand, the object no longer appeared to be under the shirt.

Tyler decided to investigate and stopped the defendant on 66th Street a short distance north of Cuming Street. He asked the defendant to identify himself which the defendant did. Tyler then "patted down" the defendant and found no weapon. He did note, however, the defendant seemed to have a considerable quantity of loose money in his pockets. At about that time another cruiser officer, Nared, arrived as did Sergeant Hughes, the officer in charge of the felony investigation. Tyler left the defendant with them and walked west on Cuming Street along the path the defendant had taken to search for a weapon which he suspected the defendant had disposed of when he disappeared from view, but he found no weapon.

At some time not precisely shown by the testimony, Tyler had informed Sergeant Hughes of his observations with reference to the defendant and also of the loose money in the defendant's pants pockets. While Tyler was searching for the weapon, Nared, at the direction of Sergeant Hughes, made the defendant empty his pockets. The contents included three $20 bills, one $10 bill, five $5 bills, thirteen $1 bills, 24 quarters, 31 dimes, 1 half dollar, 13 nickels, and 8 pennies, as well as the comb and a pair of horn-rimmed sunglasses. After the pockets

were emptied, the property was returned to the defendant and he was taken to the Sinclair station for a showup. The victim could not positively identify the defendant as the robber although he fitted the physical description. The victim particularly noted the defendant did not have on a red shirt or the dirty red stocking cap which were worn by the robber at the time of the holdup. Later, a search was made for the red shirt and stocking cap but these were never found.

After the showup, Sergeant Hughes directed Tyler and Nared to take the defendant to the police station for interrogation by other officers. Sergeant Hughes and two other police officers then went back to 66th and Cuming Streets and, after a short search, found a handgun in some shrubs at the residence at 904 North 66th Street at a point about 75 feet west of the intersection of 66th and Cuming Streets. This weapon was identified at trial as the style of weapon used by the robber. The victim also identified the "cake-cutter" comb as being like the one he observed in the hip pocket of the robber when the latter turned to walk away, and identified the sunglasses as being like those worn by the robber. He was uncertain of the exact amount of money taken, but was able to estimate the approximate amount, including the fact that it included only three $20 bills, a few $5 and $10 bills, a considerable number of $1 bills, and a large number of coins.

The defendant did not testify at trial nor at the suppression hearing.

An analysis of the issue raised by the defendant and the evidence leads to two inquiries. Was Tyler's investigative stop of defendant justified, and was there probable cause for the later search of defendant's person at the direction of Sergeant Hughes?

In this particular case we begin with the undisputed fact that a felony had been committed and all

of the officers knew this. They were acting upon the complaint and information furnished by the victim of the crime and not merely upon information from an informant, nor merely upon their own observations of suspicious conduct. Generally, proof of veracity or reliability is not required in the case of information furnished by the victim or witnesses of the crime. Jaben v. United States, 381 U. S. 214, 85 S. Ct. 1365, 14 L. Ed. 2d 345. Such persons are not to be viewed in the same way as the usual police informant. See, State v. Paszek, 50 Wis. 2d 619, 184 N. W. 2d 836; Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419; United States v. Wilson, 479 F. 2d 936 (7th Cir., 1973).

In Terry v. Ohio, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, the Supreme Court of the United States said: "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." See, also, State v. Brewer, 190 Neb. 667, 212 N. W. 2d 90. In Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612, the court reiterated what it had said in Terry v. Ohio, *supra*, adding that a brief stop for investigative purposes is permissible under appropriate circumstances and the officer may conduct a limited protective search for concealed weapons when he has reason to believe the suspect is armed. In that case, a police officer, acting on the information of an informant that the defendant who was seated in a nearby car had a weapon and drugs on his person, reached through the open window of a car in which the suspect was seated and removed a loaded handgun from the suspect's waistband. The informant in that case was known to the officer and had previously furnished reliable information. The court said the action of the officer was justified. No definite rule can be laid down which will cover all circumstances.

Let us now reexamine the information which would justify the investigative stop by Tyler in this instance. The physical description of the robber which Tyler had received from the victim through police channels did fit the defendant. The only item which did not conform to that information was that the defendant was not wearing a reddish shirt but rather was bare from the waist up, but that fact would not necessarily mean that he was not earlier attired in such a shirt. The defendant points out that Sergeant Hughes testified the initial information given to the police of the robber's description was simply that he was a black male. Tyler, however, said he had the more detailed description which we have earlier recited. The conflict in the testimony between the two officers presents a question of fact for the trial judge to determine and is not for this court on appeal. We note, moreover, that Sergeant Hughes also testified the robbery call came at 10:20 a.m. All of the other testimony and evidence, including the official police report of the incident, was that the robbery occurred at about 10:45 a.m., and the call came at about 11 a.m. This included the testimony of the victim and officers Tyler and Nared. It is apparent Sergeant Hughes was mistaken as to the hour and it appears he may well have been mistaken as to the time the detailed description was communicated.

A second factor which Tyler, an experienced police officer who was familiar with the geographic area surrounding the scene of the robbery and the location where the defendant was first observed, was entitled to consider was the defendant's proximity in time and space to the robbery scene. United States v. Holland, 510 F. 2d 453 (9th Cir., 1975); Hampton v. United States, 340 A. 2d 813 (D. C. Cir., 1975); Commonwealth v. Jones, 457 Pa. 423, 322 A. 2d 119; People v. Lucero, 182 Colo. 39, 511 P. 2d 468. In the case before us, the robber was believed to have

left the scene on foot and to be moving in a northerly direction. The place where defendant was first seen was 10 or 11 blocks north of the place where the robbery occurred and the time was about 15 minutes after its occurrence.

A third and significant factor was Tyler's observation of the defendant's conduct immediately before the stop. Tyler had been informed the robber was armed. He noted defendant was carrying an object in his hand about the size of a handgun which was covered by a cloth or article of clothing. He further noted when he passed the defendant that the latter appeared to be watching to observe what the officer's actions would be. Defendant then changed directions, passed out of the officer's view, shortly came back into sight, and proceeded on what appeared to have been his original course. At that time Tyler noted the object was no longer carried in the defendant's hand. A permissible conclusion would be that defendant had disposed of it, or hidden it elsewhere on his person. A police officer, in determining whether to make an investigative stop, is entitled to take into consideration deliberate, furtive action of the person, including that which appears to have been occasioned by the suspect's awareness of the officer's presence. State v. Booth, 202 Neb. 692, 276 N. W. 2d 673; Sibron v. New York, 392 U. S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917; United States v. Owens, 472 F. 2d 780 (8th Cir., 1973); Commonwealth v. Jones, *supra.*

Finally, Tyler was entitled to consider the probability that the defendant was the robber because the area where the defendant was walking was a neighborhood where many blacks fitting the description of the robber were not likely to be present. Furthermore, several police cars converged on the general area. It does not appear that any of them sighted any person other than the defendant who fitted the description which had been given. There is

no reason to believe the police used a dragnet approach. See People v. Harris, 15 Cal. 3d 384, 124 Cal. Rptr. 536, 540 P. 2d 632.

The manner in which Tyler carried out the investigative stop was appropriate under the circumstances. When he approached the defendant, he did nothing more than ask him to identify himself and then patted him down. This he was entitled to do for his own protection under existing circumstances. Terry v. Ohio, *supra*; Adams v. Williams, *supra*; State v. Booth, *supra*. As was said in United States v. Holland, *supra*, police officers are not required to rule out all possibility of innocent behavior before initiating a brief stop and making a request for identification. The proper test is reasonable suspicion founded on articulable facts. See, State v. Von Suggs, 196 Neb. 757, 246 N. W. 2d 206; Adams v. Williams, *supra*. Officers must be permitted to act before their reasonable beliefs are verified by escape or resulting harm which it is their duty to prevent. United States v. Holland, *supra*.

We next examine the question of whether the evidence shows that the search of the defendant and the seizure of the items found were supported by probable cause. In that connection, all of the facts which we have heretofore enumerated were entitled to be considered. The pat down by Tyler did not reveal a weapon, but it did disclose one additional important item of information in that it revealed the defendant was carrying a considerable amount of loose money in his pockets. This was not an ordinary circumstance and was one which, taken together with the other facts known to Tyler, indicated the likelihood the money was loot from the robbery and, of course, increased the probability that the defendant was the perpetrator. At this time there was clearly probable cause for search and/or arrest.

The record shows Tyler informed Sergeant Hughes of his observations concerning the defendant

and also informed him of the presence of the money on the defendant's person. Officer Nared actually made the search. It is not shown precisely what information Nared had. When he approached the defendant, Tyler had already stopped the defendant and was talking to him. At that time Sergeant Hughes was sitting in a police car apparently getting additional information through police channels, although the record is not precise enough to disclose exactly what this information was or when it was received. Nared asked the defendant to identify himself and to give his name. Nared testified the defendant told him he had nothing to identify himself and gave his name as Money. It was apparently after this that Sergeant Hughes gave the search order, while Tyler was away from the scene making his unsuccessful search for the weapon.

The principles applicable to the above circumstances are these: "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. State v. Irwin, 191 Neb. 169, 214 N. W. 2d 595; State v. Dussault, 193 Neb. 122, 225 N. W. 2d 558; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790. It is not only the personal knowledge of the officer who makes the search and seizure which may be used to test probable cause, but added thereto may be the collective knowledge of the law enforcement agency for which the officer acts. However, in that case there must have been some communication of knowledge to or direction to act from the department or officer having that knowledge to the officer making the search and seizure. United States v. Wixom, 460 F. 2d 206; United States v. Canieso, 470 F. 2d 1224; United States v. Nieto, 510 F. 2d 1118; United States v. Del

Porte, 357 F. Supp. 969, affirmed 483 F. 2d 1399.''
State v. Aden, 196 Neb. 149, 241 N. W. 2d 669.  See,
also, State v. Brewer, 190 Neb. 667, 212 N. W. 2d 90;
State v. Dussault, 193 Neb. 122, 225 N. W. 2d 558;
Brinegar v. United States, 338 U. S. 160, 69 S. Ct.
1302, 93 L. Ed. 1879.

AFFIRMED.