STATE OF NEBRASKA, APPELLEE, V.
JOSEPH H. NOWICKI, APPELLANT.

309 N.W.2d 89

Filed August 7, 1981.   No. 43764.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, Retired District Judge.

BRODKEY, J.

Joseph H. Nowicki, the defendant and appellant herein, was charged in the District Court of Douglas County, Nebraska, with possessing a controlled substance, to wit, cocaine, with the intent to distribute, deliver, or dispense in violation of Neb. Rev. Stat. § 28-416 (Reissue 1979). The case was tried before the court on July 22, 1980, and the defendant was convicted of the lesser-included offense of possession of a controlled substance as charged. Nowicki was subsequently sentenced to a term of probation for a period of 2 years, the first 60 days to be spent in the custody of the Douglas County Department of Corrections. He has now appealed to this court, and his sole assignment of error is that the District Court erred in overruling his motion to suppress the cocaine seized as being the fruit of an unlawful arrest. We affirm.

The record on appeal discloses that on May 23, 1980, at approximately 4 p.m., Officer Thomas Gorgen of the Omaha Police Department was informed that one William Yoder had been arrested, and a quantity of suspected cocaine had been seized pursuant to a search warrant issued to Officer Jack Caniglia. At the time of the arrest, Yoder was driving a vehicle owned by

Hezekiah Pittman, who was suspected of distributing controlled substances in Omaha.

In an effort to locate Pittman, the police obtained information which led them to believe that Pittman was staying at the address of 13164 Grover Plaza in Omaha, and that he possibly had in his possession a quantity of cocaine. A search warrant for the address was obtained by Officer Caniglia, which was served upon the lessee of the premises, one Barney L. Boyd. Boyd informed the police that Pittman had spent the previous night at the apartment with another individual known to Boyd only as "Bill." Boyd told the police that Pittman had remained at the apartment until 3 p.m. that afternoon, when Pittman received a telephone call from an anonymous caller informing him that "Bill" had been arrested. The physical description given by Boyd of the person known as "Bill" was similar to the description of William "Bill" Yoder who had been arrested driving Pittman's car. Boyd stated to the police that Pittman had requested a ride to the area of 24th and L Streets in Omaha, and that Pittman was carrying a brown cardboard box when he left the Boyd vehicle.

Upon their return to the Central Police Station, Officers Caniglia and Gorgen were advised by their supervisor, Lt. Robert Olson, that further information as to the whereabouts of Pittman had been obtained from two informants who had provided reliable information in the past. The first informant stated that Pittman was involved in drug activities with Joseph H. Nowicki, who resided at 2312½ L Street with a Caucasian female named Denise Sedan, and that Nowicki was distributing cocaine from that address. The informant also stated that Nowicki was supplied with his cocaine by a black male known as Hezekiah Pittman and that it was probable that Pittman would go to the Nowicki residence if he needed a place to "hide out."

The second informant stated to the police that he had observed Pittman in possession of a quantity of suspected cocaine within the previous 72 hours and that in

all likelihood Pittman would go to the residence of Nowicki to "hide out." In addition, the second informant stated that Pittman owned a blue, two-door Dodge automobile that was parked in that vicinity, in which Pittman might hide suspected cocaine.

Based upon the information stated above, officers were assigned to prepare an affidavit and application for issuance of a search warrant for the apartment at 2312½ L Street, and also for the persons of Hezekiah Pittman, Joseph H. Nowicki, Denise Sedan, and their automobiles. Officers Caniglia and Gorgen were assigned to commence surveillance of the defendant's apartment to determine if Hezekiah Pittman was at that location. It appears that the police were directed to remain in position until the search warrant was completed and brought to the residence. During the surveillance, officers conducting the surveillance observed a blue 1967 Dodge two-door van parked in the Payless Shoe Store parking lot at 24th and L Streets. A check of the vehicle's license indicated that the van was registered to Hezekiah Pittman. Also parked in the lot was a red pickup truck which Officer Caniglia was advised belonged to the defendant, Joseph Nowicki.

At approximately 9:30 p.m. that evening, a Caucasian male and female left the apartment and entered the blue van. The automobile was driven to the front of the building, at which time a black male left the building and entered the vehicle. At this time, Officers Caniglia and Gorgen were directed to follow the parties, and they began to follow the red pickup truck owned by the defendant. While the officers were following the truck, they were advised by Lt. Olson over their radio that they should stop and detain the driver of the truck if they thought he spotted them following the vehicle. The truck proceeded 3 blocks north on 24th Street where it turned into a McDonald's restaurant.

Suspecting that the driver had spotted them, the officers stopped the vehicle in question and had the driver pull it to the side of 24th Street. At this time the

officers obtained the driver's license and registration of the driver of the truck, which identified him as Joseph Nowicki. The defendant was told that the police were conducting an investigation, and Nowicki returned to the driver's seat of his truck. After Nowicki returned to his vehicle, the officers were directed by Lt. Olson by radio to have the party transported to Central Police Station. As the defendant was leaving his truck at the request of the police, Officer Caniglia observed a plastic bag, with a white substance enclosed, protruding from the driver's seat. It appears that there was a tear or slit in the seat, and Officer Caniglia testified that he could observe the plastic bag from where he was standing outside the truck. Officer Caniglia took the plastic bag into his possession. The contents were later identified as cocaine, and the defendant was subsequently arrested for possession of a controlled substance. It appears that while the police were detaining Nowicki prior to his arrest, Officer Gorgen returned to the surveillance area and obtained a police cruiser, which was used to transfer the defendant back to his residence at 2312½ L Street. The warrant for the search of defendant's residence, vehicle, and person arrived approximately 45 minutes later. The police subsequently found on the person of the defendant a small piece of folded magazine paper containing a white substance which was later identified as cocaine.

In his brief on appeal the defendant assigns as error that the District Court erred in failing to sustain defendant's motion to suppress the cocaine seized as being the "fruit" of an unlawful arrest. Defendant's primary contention is that the police did not have probable cause to arrest him as there was no evidence that the vehicle was violating any traffic regulations, or that the defendant was engaged in any other criminal activities. It would appear from the record that the defendant is challenging the investigative stop of his vehicle, rather than the subsequent search of his person.

By virtue of the authority contained in Neb. Rev.

Stat. § 29-829 (Reissue 1979), police officers may stop any person in a public place whom they reasonably suspect of committing, who has committed, or who is about to commit a crime, and may demand of that person his name, address, and an explanation of his actions. In the recent case of *State v. Ebberson, ante* p. 41, 305 N.W.2d 904 (1981), this court considered the standards required for making an investigative stop in connection with the recent opinion of the U.S. Supreme Court in *United States v. Cortez*, __U.S.__, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). In *Ebberson*, we stated at 44-45, 305 N.W.2d at 907:

"The U.S. Supreme Court has addressed the standards that must be met in an investigatory stop to satisfy the requirements of the fourth amendment in *United States v. Cortez*, __U.S.__, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). The Court held that an investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances — the whole picture — must be taken into account.

"Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, *as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior.* See, *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed 2d 660 (1979)." (Emphasis supplied.)

This court has held that a police officer is authorized to arrest a person without a warrant if he has reasonable cause to believe that such person has committed a crime. In *State v. Jones*, 208 Neb. 641, 645, 305 N.W.2d 355, 358 (1981), we stated: " '[T]he test of probable cause

for a warrantless arrest is whether at the moment the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" In this regard, we have also held that probable cause is to be evaluated by the collective information of the police engaged in a common investigation. *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980).

In assessing the totality of the circumstances presented by the facts in the instant case, we determine that probable cause existed for the police to arrest the defendant on the evening of May 23, 1980. The police were informed that the defendant resided at 2312½ L Street and that Pittman would probably be at this address. They were also provided a description of the Pittman vehicle and advised that cocaine was sometimes kept in the car. This information was all verified by the police in their surveillance of the Nowicki address, and the fact that William Yoder was arrested while driving a vehicle owned by Pittman, which was found to have a controlled substance hidden inside. The information strongly indicated that Pittman and his acquaintances possessed and dealt in drugs, and the information obtained by the police provided probable cause to believe that the defendant was committing and had committed a crime prior to his arrest.

We also note that once the police had detained the defendant, their observation of the bag of cocaine inside his vehicle was proper, as the bag was in the plain view of the police when the door was opened. See, *State v. Brown*, 195 Neb. 321, 237 N.W.2d 861 (1976); *State v. Sotelo*, 197 Neb. 334, 248 N.W.2d 767 (1977). The evidence was properly seized and received into evidence at trial. Defendant's sole assignment of error is without merit.

The judgment of the District Court must be affirmed.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority in this case. While I would generally concur with the principles of law set out by the majority, I believe the facts in this case do not justify the application of those rules. The record discloses that as the officers followed the truck, it pulled into a McDonald's parking lot and the driver ordered food. There was nothing suspicious about the driver or his driving other than it was believed that these individuals had, on other occasions, been involved in drug dealing at 2312½ L Street. There was no evidence that the occupants were at the moment engaged in any illegal activity.

While the defendant was waiting for his food, the officers were advised by Lt. Olson that if the officers thought the driver "had spotted their tail" they should stop him, as a search warrant was being prepared for the residence at 2312½ L Street. The officers then blocked the vehicle's path and stopped it as it was leaving the McDonald's parking lot. The officers advised the occupants that they were conducting an investigation and asked for the defendant's driver's license and registration. The defendant complied with the request. The officers then ran a vehicle check on the registration and were advised by Lt. Olson to arrest the party and transport him to Central Police Station. No reason for the arrest was given. At that point in time the officers had no evidence that any crime had been committed, was being committed, or was about to be committed. All they knew was that the individuals or some of them had been involved in drug dealing and the home at 2312½ L Street was to be searched pursuant to a search warrant, which was then being obtained. It was not until *after* they had arrested the defendant pursuant to instructions by Lt. Olson that they sought to secure the vehicle and for the first time observed the plastic bag protruding from a slit in the seat.

Officer Caniglia, one of the arresting officers, testified that he was ordered to arrest the defendant, take

him to police headquarters, and tow his vehicle before any weapon or cocaine was found. The arrest was in fact then accomplished and the defendant handcuffed before anything was found in the truck.

While the need to combat crime is ever present, we must not disregard the clear mandates of the Constitution. This case now stands for the proposition that if one has a prior criminal record and is known to deal in illegal activity, he or she may be arrested and their persons or properties searched without warrant on the basis of their prior association with crime. Such a conclusion totally annihilates the protections sought to be provided citizens by the fourth amendment to the Constitution of the United States and Neb. Const. art. I, § 7. There is simply no evidence in this record to indicate that prior to the arrest being made anyone associated with law enforcement believed that there were drugs present in the vehicle, or that at the time of the defendant's arrest he was then actually engaged in a drug transaction. Probable cause has been defined as existing if the facts and circumstances known to the officer warrant a prudent and reasonable man in believing that in the case of an arrest the arrestee has committed the offense. See, *Henry v. United States*, 361 U.S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963). Mere good faith on the part of arresting officers cannot justify a warrantless arrest. I believe that the motion to suppress should have been sustained.