STATE OF NEBRASKA, APPELLEE, V. DWIGHT PIERCE, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. KERRY C. WELLS, APPELLANT.
340 N.W.2d 122

Filed November 4, 1983. Nos. 82-827, 82-828.

Marvin V. Miller, for appellants.

Paul L. Douglas, Attorney General, and Martel J. Bundy, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

WHITE, J.

These two cases were consolidated for trial and for purposes of appeal before this court. Appellant Dwight Pierce was convicted by a Saunders County jury of robbery and aiding and abetting the use of a firearm to commit a felony. Appellant Kerry C. Wells was also convicted of robbery and use of a firearm to commit a felony. Both appellants were sentenced for a period of not less than 15 years nor more than 25 years for the robbery, and not less than 6 years nor more than 10 years for use of a firearm to commit a felony, said sentences to be served consecutively. We affirm.

Appellants appeal, and assign that the trial court erred in (1) failing to sustain appellants' motions to suppress evidence obtained by the Midwest City, Oklahoma, police department; (2) failing to sustain

appellants' motions for a continuance and subsequent motions for a new trial on the grounds that appellants were deprived of their right to present evidence by either compelling the attendance of or obtaining the deposition of Thomas J. Wilmoth; (3) failing to sustain appellants' motions for a new trial on grounds of newly discovered evidence; (4) failing to sustain appellants' motions for a new trial for the reasons that the verdicts of the jury were not supported by the evidence and were contrary to law; and that (5) the sentences imposed were excessive.

A statement of the facts is necessary. Both cases stem from an incident which occurred at the J. & M. Pitstop, in Mead, Nebraska, on February 23, 1982. At approximately 7 p.m. Marlene Vogt, one of the owners, was working alone as a clerk when two men dressed in dark jackets and blue jeans, with ski masks pulled over their heads, entered the store. One of the two men was armed with a revolver. The two men approached Mrs. Vogt and demanded her money. Mrs. Vogt was then struck across the hands with a yardstick which the robber without the gun picked up in the store. Mrs. Vogt removed money from the cash register and handed the money to the robbers. One of the robbers motioned to Mrs. Vogt's purse, which was behind the counter, and she gave the money from the purse to him. Before leaving, the robber without the gun struck Mrs. Vogt in such a manner across the back of the neck as to render her unconscious, and the robbers made good their escape. Approximately $350 was taken in the robbery.

The Saunders County sheriff's office and the Nebraska State Patrol responded to the call from Mrs. Vogt a short time later. A number of photographs were taken which variously showed the interior of the J. & M. Pitstop and a number of wet boot impressions which were found on the floor and outside the building. There were no arrests made or leads discovered by either of these two departments.

On February 28, 1982, an off-duty police lieutenant, Eddie Thomason, from Midwest City, Oklahoma, pulled into a Champlin service station in that city to obtain gasoline for his personal vehicle. While Thomason was putting gas in his vehicle, Wells approached and asked him to pay Wells cash for the gas and let Wells charge the gas on his credit card. Wells explained that he and some friends were traveling and they had run out of money and needed some cash to buy food. Thomason refused, after which Wells mumbled something and returned to a vehicle which was parked directly in front of the service station, just east of the front door. Thomason went into the station to pay for his gas. He noticed that the vehicle in question had an out-of-state license plate. He also noticed that the appellant Pierce had left the vehicle and was inside the station wandering around. He did not appear to be attempting to purchase anything, but, rather, he appeared to be looking the place over. Thomason left the station, parked some distance away, and observed appellants' behavior. Based upon these observations the officer radioed for a uniformed officer for assistance. Thomason observed the appellants from approximately 8:30 p.m. to 8:47 p.m.

Upon arrival of the uniformed police officer, Officer Anderson, both officers approached the vehicle, which was still occupied by appellant Wells and Randall Wilmoth. Thomason ordered the occupants out of the vehicle. Upon his exit Wells turned "as if he was trying to retrieve or place something under the right front seat." The officers moved Wells and Wilmoth to the front of the car and away from the door. While Officer Anderson was questioning Wilmoth, Officer Thomason went back and checked underneath the right front seat of the car. Under the seat was found a loaded .38-caliber revolver, a bag of marijuana, and a ski mask. Meanwhile, Pierce had joined his companions. The officers then advised the three men of their rights and placed them

under arrest for possession of a firearm and possession of marijuana. They were transported to police headquarters.

During custodial interrogation, Randall Wilmoth provided information to the police about various crimes the three men had perpetrated during their travels. Pursuant to this information and credit card receipts obtained in a subsequent search of the vehicle, the Midwest City Police Department sent a general teletype bulletin to the locations where the appellants had traveled. The Saunders County sheriff's office responded, and the appellants and Wilmoth were extradited.

In appellants' first assignment of error they contend that the weapon, marijuana, and ski mask obtained by Officer Thomason were illegally seized and as such should have been suppressed. They further contend that the "fruit of the poisonous tree" doctrine applies to other evidence obtained under the subsequent search warrant and as such that evidence was "tainted" and also should have been suppressed. We disagree. The appellants assert, and we agree, that at the time their vehicle was initially searched, the police officers did not have probable cause to arrest them. However, as the appellants later concede in their briefs, their detention and the search of their vehicle are more properly classified as a stop and search situation subject to the guidelines pronounced in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In *Terry* the U.S. Supreme Court said at 22: "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." See, also, *State v. Anderson*, 204 Neb. 186, 281 N.W.2d 743 (1979).

This lesser standard for investigative stops was recently articulated by this court in *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982), and previously

stated in *State v. Nowicki*, 209 Neb. 640, 309 N.W.2d 89 (1981). Relying on *United States v. Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981), we determined that " 'an investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in a criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances — the whole picture — must be taken into account.

" 'Police officers must have a particularized and objective basis for suspecting the person stopped of criminal activity. The assessment of the totality of circumstances includes all of the objective observations and considerations, *as well as the suspicion drawn by a trained and experienced police officer by inference and deduction that the individual stopped is or has been or is about to be engaged in criminal behavior.*' " *Nowicki* at 645, 309 N.W.2d at 92-93.

It is readily apparent, when one applies the facts of the present case, that the officers in question took reasonable action on the basis of particularized and objective facts. Officer Thomason, a 21-year veteran of law enforcement and supervisor for intelligence investigation in Midwest City, Oklahoma, testified that he first became suspicious of appellants' conduct when Wells approached him and asked whether Thomason would be willing to charge his gas to Wells' credit card and pay Wells the cash in return. Wells also stated they had no money. The officer also noted that the car was parked in such a position as to make an easy getaway, that the car had out-of-state license plates, and that appellant Pierce had entered the service station and was wandering around, but did not appear to be attempting to purchase anything. Thomason also testified that he observed appellants for approximately 15 minutes before making his initial investigation.

On the basis of these facts we conclude that the activities of the officers prior to the actual arrest of the

appellants were based upon a suspicion of criminal activity falling within the fourth amendment guidelines set forth above. Therefore, such action was permissible under Neb. Rev. Stat. § 29-829 (Reissue 1979).

A second issue which arises from the facts is the scope of a search in a *Terry*-type investigation. This issue was before the U.S. Supreme Court in the recent case of *Michigan v. Long*, 51 U.S.L.W. 5231 (U.S. July 6, 1983). In *Long* two officers on patrol stopped to investigate a speeding car that had swerved off into a ditch. Long, the occupant of the vehicle, met the officers at the rear of the car but turned to reenter it when asked to produce his vehicle registration. He had left the door on the driver's side open. The officers both followed Long, and both spotted a hunting knife on the floor of the driver's side. Long was then stopped and subjected to a protective *Terry* search. The car was subsequently searched for other weapons.

The Court held that a protective *Terry* search of the passenger compartment of an automobile is permissible, recognizing that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long, supra* at 5236. Furthermore, the Court concluded that "the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile. Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.* at 5236-37.

As previously noted, Officer Thomason had "reasonable suspicion" to believe that a robbery was about to take place. This fact, coupled with the testimony of Thomason that as Wells was exiting the

vehicle he turned "as if he was trying to retrieve or place something under the right front seat," certainly gave rise to an articulable and objectively reasonable belief that the suspects were armed and dangerous.

It should also be noted that the other items seized by the police were either in plain view or were seized pursuant to a valid search warrant. For the above reasons appellants' first assignment of error must fail. The District Court was correct in refusing to suppress the evidence.

Appellants contend in their second assignment of error that the District Court erred when it denied authorization to depose Thomas J. Wilmoth, father of the State's principal witness. Appellants further assert that this error became prejudicial when the District Court denied their motion for a continuance to obtain the elder Wilmoth's testimony at trial. This court has repeatedly held that the trial court is vested with broad discretion in considering requests of defense counsel for discovery and error can be predicated only upon an abuse of such discretion. *State v. Fuller*, 203 Neb. 233, 278 N.W.2d 756 (1979); *State v. Isley*, 195 Neb. 539, 239 N.W.2d 262 (1976). This court has further stated that a motion for continuance is addressed to the sound discretion of the court, and in the absence of a showing of an abuse of discretion, a ruling on a motion for a continuance will not be disturbed on appeal. There is no abuse of discretion by the court in denying a continuance unless it clearly appears that defendant suffered prejudice as a result thereof. *State v. Goodloe*, 197 Neb. 632, 250 N.W.2d 606 (1977); *State v. Ell*, 196 Neb. 800, 246 N.W.2d 594 (1976).

A review of the record indicates that Thomas Wilmoth had no knowledge, personal or otherwise, about the crimes in question. Wilmoth's testimony could only serve to impeach the general credibility of his son. Neb. Rev. Stat. § 27-608(1)(a) (Reissue 1979). Mr. Wilmoth admitted in a letter to defense

counsel that he had had little contact with his son since 1974. Randall Wilmoth testified that the last time he had seen his father was for 15 minutes some 2 years ago. He had not seen his father for 5 or 6 years prior to the stated meeting. In light of the foregoing it cannot be said that the trial court abused its discretion in not allowing the deposition of Thomas Wilmoth and in refusing to grant a continuance.

Appellants contend as their third assignment of error that the District Court erred in overruling their motion for new trial based on newly discovered evidence. This argument is without merit. Appellants' affidavits in support of their motion allege that Randall Wilmoth told a cellmate a story different than what the witness related at trial. As such, the evidence is relevant only on the issue of the credibility of a witness. In order to justify a new trial, newly discovered evidence must involve something other than the credibility of a witness who testified at trial. *State v. Mays*, 205 Neb. 730, 289 N.W.2d 545 (1980); *State v. French*, 200 Neb. 137, 262 N.W.2d 711 (1978).

The appellants contend in their fourth assignment of error that the trial court erred in overruling their motion for a new trial for the reason that the verdict of the jury was not supported by the evidence and was contrary to law.

The rule in this state is that in determining the sufficiency of the evidence to sustain a conviction in a criminal prosecution, this court does not resolve conflicts in the evidence, pass upon the credibility of the witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of the facts, and its verdict must be sustained if, taking the view most favorable to the state, there is sufficient evidence to support it. *State v. True*, 210 Neb. 701, 316 N.W.2d 623 (1982). In other words, we will not interfere with a guilty verdict based upon evidence in a criminal case unless

that evidence is so lacking in probative force that it can be said that, as a matter of law, the evidence is insufficient to support a verdict of guilty beyond a reasonable doubt. *State v. Huffman*, 214 Neb. 429, 334 N.W.2d 3 (1983). An examination of the record reveals sufficient competent evidence to sustain the jury's verdicts.

Finally, appellants argue that their sentences are excessive. Robbery is a Class II felony which provides for a penalty of 1 to 50 years' imprisonment. Neb. Rev. Stat. §§ 28-105, 28-324 (Reissue 1979). Using a firearm to commit a felony is a Class III felony, as is aiding and abetting such a crime. Neb. Rev. Stat. §§ 28-206, 28-1205 (Reissue 1979). A Class III felony provides for a penalty of 1 to 20 years' imprisonment, a $25,000 fine, or both. § 28-105. The sentences imposed by the trial court are clearly within these statutory guidelines.

As we have said: " 'In the absence of an abuse of discretion by the trial court we will not disturb on appeal a sentence imposed within the statutory limits.' " *State v. Ellefson*, 214 Neb. 747, 754, 336 N.W.2d 88, 92 (1983). No abuse of discretion is evident in this case.

In light of the foregoing we affirm the convictions and sentences of appellants imposed by the District Court.

AFFIRMED.

KRIVOSHA, C.J., concurring.

While I am in complete agreement with the majority in this case, based upon the fact situation presented to us, I write separately to make it clear that the majority opinion should not be read to mean that any police officer may stop and search any individual based solely on the fact that one is parked in a filling station or without cash in one's pocket. In this particular case the officer, while unable to articulate the probable cause to make an arrest, did have sufficient circumstances to justify the action taken. The result in this case is reached based upon

the specific facts in this case, which are not likely to be repeated, thereby creating a general proposition of law.