STATE OF NEBRASKA, APPELLEE, V. HENRY E. PATTERSON, APPELLANT.

465 N.W.2d 743

Filed February 15, 1991.   No. 89-1390.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Henry E. Patterson appeals his conviction for possession of cocaine. Patterson was initially charged with unlawful possession with intent to deliver a controlled substance, pursuant to Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988), but was convicted by a jury on September 7, 1989, of the lesser-included offense of possession of a controlled substance. Patterson was sentenced to a term of 320 days in the Douglas County Correctional Center. He has served his sentence and has been released free of restriction.

On April 27, 1989, Omaha Police Officer Mark Langan received information from a confidential informant that Patterson was selling cocaine in the north Omaha area. The informant had supplied information to the police for several years and, in the weeks before the arrest of Patterson, had supplied information which resulted in the arrest of at least two persons on drug-related charges. The informant also made several controlled "buys" of cocaine for police. The informant

was paid for all information supplied in Patterson's case.

The informant advised Officer Langan that he had purchased cocaine from Patterson on several occasions in the past. The informant also told the officer that Patterson drove a black Ford Escort and that he knew Patterson's telephone number, but not his address. The informant told the officer he had seen Patterson with cocaine in the Escort within the last 24 hours. Half an hour later, the informant called Langan back and said he had just spoken to Patterson and that Patterson would be leaving his house that night in the Escort to sell cocaine from the vehicle in the north Omaha area. The informant said that Patterson told the informant he would be able to buy cocaine from Patterson that night.

The police verified that the telephone number furnished by the informant was assigned to S.V. Patterson of 3839 Parker Street and that a black Ford Escort was registered to Patterson at that address. Patterson later testified that he lived with his mother at that address. At 7 p.m. on April 27, an Omaha police officer saw the Escort pull up to 3839 Parker and a black male enter the house. At 7:28 p.m., the same individual left the house and departed in the same vehicle. The black male driving the Escort matched the description of Patterson given by the confidential informant.

Officer Langan and another police officer, in an unmarked vehicle, attempted to stop the black Escort as it drove away, by pulling in front of it at a stop sign. The officers were wearing jackets that identified them as police officers, but were otherwise dressed in civilian clothes. Officer Langan shouted to the driver of the Escort that he was a police officer and instructed the driver to turn off the car. Instead of stopping, the driver of the vehicle pulled away from the scene and drove through a field. Langan testified that he then began to run alongside the Escort, yelling, "[P]olice," and instructing the driver to stop the car. After the driver failed to stop, Langan returned to the police cruiser and began to pursue the Escort. The officers pursued the vehicle for three or four blocks, at which time the driver stopped the car of his own accord. The driver of the vehicle was later identified as Patterson.

Officer Langan ordered Patterson out of the car and advised

him that he was under arrest for obstructing the administration of law and for possession of a controlled substance. Patterson's car was driven, with his permission, to a carwash bay, where it was searched without a warrant. A small bag of marijuana was found during the search. Patterson was taken to the police station and strip searched. A baggie of crack cocaine was found in his underwear. After being given a *Miranda* warning, Patterson admitted his intent to sell a portion of the crack cocaine. At the trial, Patterson testified that he did use cocaine and that the cocaine found in his underwear belonged to him, but denied intending to sell the cocaine.

Prior to trial, Patterson moved to suppress the cocaine as the fruit of an illegal arrest under the fourth amendment to the U.S. Constitution. The district court overruled the motion, and evidence of the cocaine was admitted at trial over objection. Patterson assigns as error the district court's decision to admit evidence of the cocaine, as well as statements he made to police following his arrest.

Patterson has served his 320-day sentence at the Douglas County Correctional Center and has been released free of restriction. Therefore, we must consider first whether his direct appeal to this court is now moot.

In *St. Pierre v. United States*, 319 U.S. 41, 63 S. Ct. 910, 87 L. Ed. 1199 (1943), the U.S. Supreme Court held that because the petitioner had fully served his sentence before his appeal reached the Court, the case had become moot because there no longer existed a subject matter on which judgment of the Court could be found. The Court in *St. Pierre* stated that "reversal of the judgment below cannot operate to undo what has been done or restore to petitioner the penalty of the term of imprisonment which he has served." 319 U.S. at 42-43. However, the Court recognized that if the petitioner was able to show that further penalties or disabilities could be imposed on him as a result of the prior judgment, then the case was not moot. *St. Pierre, supra*.

In *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968), the Supreme Court again dealt with the issue of whether or not the petitioner's appeal was moot because he had completely served his sentence. The Court stated that mere

release of the prisoner does not automatically foreclose consideration of the merits of the case by the Court, provided the case falls under one or both of the exceptions to the "doctrine of mootness" recognized by the Court in *St. Pierre, supra*. First, the Court held that the State may not effectively deny the prisoner access to the appellate courts until he has been released and then argue that his case has become moot. The Court stated that there was no way Sibron could have brought his case before the Court during the pendency of his 6-month sentence due to the overcrowding of the court system in New York, despite the fact that he took all steps to perfect his appeal in a prompt, diligent, and timely manner. He was also precluded by statute in New York from posting bail pending appeal. The Court stated that if Sibron were unable to have his case heard simply because he received a short sentence, then he would be rendered remediless and defenseless against unconstitutional conduct.

The second exception recognized in *St. Pierre* permits adjudication of the merits of a criminal case where the petitioner may suffer future state or federal penalties or disabilities as a result of the judgment. This exception has been expanded to include a wide array of "penalties or disabilities." See, *Fiswick v. United States*, 329 U.S. 211, 67 S. Ct. 224, 91 L. Ed. 196 (1946) (case was not moot because the petitioner might later be subject to deportation for committing a crime of moral turpitude); *United States v. Morgan*, 346 U.S. 502, 74 S. Ct. 247, 98 L. Ed. 248 (1954) (petitioner's case was not moot because subsequent convictions might carry heavier penalties and civil rights might be affected); *Pollard v. United States*, 352 U.S. 354, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957) (the mere possibility of consequences collateral to the imposition of sentence is enough to justify hearing the merits of the case); *Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968) (the possibility that the appellant's license to engage in the luncheonette business might be revoked because of a criminal conviction was enough to bring the case within this second exception).

The Court in *Sibron, supra*, held that a criminal case is moot only if it is shown that there is no possibility that any collateral

legal consequences will be imposed on the basis of the challenged conviction. Since Sibron's credibility as a witness would be subject to impeachment by use of the conviction and the conviction might be considered by a court in sentencing in the future, the Court concluded that Sibron would suffer future penalties and disabilities and his case was not moot under *St. Pierre*.

Nebraska has adhered to the rules announced in *St. Pierre, supra*, and *Sibron, supra.. State v. Myles*, 187 Neb. 105, 187 N.W.2d 584 (1971).

On September 7, 1989, Patterson was convicted of a violation of § 28-416(3), possession of a controlled substance. He was sentenced on October 31, 1989, to serve a term of 320 days in the Douglas County Correctional Center and was given credit for 139 days served prior to trial. Patterson filed his notice of appeal timely on November 21. However, Patterson did not file his brief to this court until March 9, 1990, after requesting and receiving a 30-day extension for filing time. There is no indication in the record that Patterson made a motion for release on bail pending his appeal to this court. Because Patterson did not make a motion to be released on bail and attempt to delay serving his sentence until his appeal was heard, he has not taken all possible steps in which to expedite his appeal to this court before his sentence was fully served. Combined with this is the evident lack of urgency shown by his request for additional time in filing his brief before this court. We realize that even if he had filed his brief timely, it is possible his case would not have been heard before expiration of his sentence. However, it is his effort that is crucial under *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). Patterson did not make all possible efforts to have his case heard before the termination of his sentence. Therefore, he does not fit within this *St. Pierre* exception. However, we do believe that because of his conviction Patterson may suffer future penalties or disabilities, and therefore his case falls within the second exception to the mootness doctrine discussed in *St. Pierre*.

Patterson was convicted of a Class IV felony and sentenced to a term of less than 1 year. He is not subject to future

additional punishment under Neb. Rev. Stat. § 29-2221 (Reissue 1989), the Nebraska habitual criminal statute. However, under Neb. Const. art. VI, § 2, Patterson may no longer vote in any state election because he was convicted of a felony. Additionally, Patterson's credibility may be subject to impeachment by use of his felony conviction, and a judge may consider it when imposing sentence for a subsequent offense. Certainly, these are "disabilities and penalties" under *Sibron*. Because Patterson will be subject to the various collateral consequences outlined above, his case falls within the second *St. Pierre* exception, and his appeal is not moot. We now consider the merits of his claim.

In support of his assigned error, Patterson claims that the cocaine found on his person in a postarrest search, as well as his confession, was the fruit of an illegal arrest under the fourth amendment.

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings are clearly erroneous. *State v. Caples*, 236 Neb. 563, 462 N.W.2d 428 (1990); *State v. Blakely*, 227 Neb. 816, 420 N.W.2d 300 (1988). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, this court takes into consideration that the trial court has observed the witnesses testifying. *State v. Garcia*, 235 Neb. 53, 453 N.W.2d 469 (1990).

In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the U.S. Supreme Court held that when a police officer suspects that criminal activity may be afoot, he may approach a person for purposes of investigating criminal behavior even though there is no probable cause to make an arrest. Nebraska has adopted this standard for investigatory stops. See, *State v. Caples, supra*; *State v. Longa*, 211 Neb. 356, 318 N.W.2d 733 (1982). In *State v. Pierce and Wells*, 215 Neb. 512, 340 N.W.2d 122 (1983), we repeated our statement in *State v. Nowicki*, 209 Neb. 640, 645, 309 N.W.2d 89, 92 (1981):

> [A]n investigatory stop must be justified by objective manifestation that the person stopped is, has been, or is about to be engaged in criminal activity. In determining what cause is sufficient to authorize police to stop a person, the totality of the circumstances — the whole

picture — must be taken into account.

In this case, the information that led the Omaha police to suspect that Patterson was involved in criminal activity was supplied to them by a confidential informant. Patterson claims that because the informant was paid by police for his information, the informant was unreliable and his information could not serve as a basis for stopping and arresting Patterson. We disagree.

In *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), the U.S. Supreme Court addressed the issue of whether information supplied by a confidential informant was sufficient to provide probable cause to support issuance of a search warrant. In finding that information supplied in an anonymous letter later corroborated through observation of the defendants was sufficient to constitute probable cause for the warrant, the Court rejected the strict two-pronged *Aguilar-Spinelli* test previously used to determine if probable cause existed based on an informant's tip. Instead, the Court adopted the "totality of the circumstances" test. In considering the totality of the circumstances, the issuing magistrate should consider elements of the old two-pronged test, such as the informant's veracity, reliability, and basis for knowledge. The magistrate should then make a commonsense determination whether, given all the facts and circumstances, probable cause exists to issue a warrant.

In Patterson's case, it is not necessary that we decide the issue of whether the informant's information was sufficient to provide probable cause for a warrant, since Patterson was legally stopped and arrested under the lesser *Terry* standard. However, we find the *Gates* standard useful in determining whether the informant's information provided sufficient "reasonable belief" under *Terry* to justify the stop.

The confidential informant twice provided the Omaha police with information regarding Patterson's drug activities on April 27, 1989. The informant described Patterson; described the vehicle he was driving, in which he was later apprehended; and also provided a telephone number, which was later confirmed as belonging to Patterson's mother. Additionally, the informant was known to have provided accurate, reliable information to

the police in the past, which led to drug-related arrests, and had participated in two "controlled buys" for the police. All the information provided by the informant about Patterson was later corroborated through police record checks and observation on the night of April 27. The police saw a man matching the description of Patterson drive up to the address matching the telephone number provided by the informant. The individual was driving the same black Ford Escort described by the informant. When the police attempted to stop the vehicle as it drove away from the house, the individual driving the Escort attempted to flee the area.

When looking at the totality of the information provided by the informant, together with corroboration of this information by police, the officers had sufficient reasonable suspicion under *Terry* to stop Patterson after he left his home that evening, in order to investigate possible drug activity. The fact that the informant was paid for his information is inconsequential given that all his information was later determined to be accurate. When Patterson failed to pull over as instructed by the officers, but instead fled from the scene, probable cause to believe Patterson was engaged in illegal drug activity arose, and the police were entitled to place him under arrest. The search of Patterson's person, whereby the cocaine was discovered in his underwear, was reasonable under the fourth amendment as a search incident to arrest. See, *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *United States v. Edwards*, 415 U.S. 800, 94 S. Ct. 1234, 39 L. Ed. 2d 771 (1974). The cocaine was properly admitted into evidence. Patterson was also given a *Miranda* warning prior to any questioning at the police station and waived all his constitutional rights at that time. His confession was also properly admitted into evidence by the trial court. The decision of the trial court is affirmed.

AFFIRMED.