SHERRY HRON AND CHEYENNE HRON, APPELLEES,
V. LARRY DONLAN, APPELLANT.

609 N.W. 2d 379

Filed April 21, 2000. No. S-98-1016.

Peter C. Bataillon, of Frazier, Wieland, Bataillon & Katz, for appellant.

Marc B. Delman for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Larry Donlan appeals the granting of a protection order to Sherry Hron and her daughter, Cheyenne Hron, enjoining Donlan from imposing any restraint upon the person or liberty of Hron or Cheyenne, and from threatening or otherwise disturbing their peace. We moved this case to our docket pursuant to our power to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## BACKGROUND

Hron filed for a protection order against Donlan for both herself and Cheyenne pursuant to Neb. Rev. Stat. § 42-924 (Supp. 1997). At the time of this action, Hron was an employee of Bellevue Health Center (the clinic). Donlan was an antiabortion protester who was protesting outside the clinic. Several days a month, Hron brought her young daughter, Cheyenne, to work with her when she was unable to arrange child care. Hron and Donlan had encountered one another on a regular basis at the clinic. The Douglas County District Court granted an ex parte protection order, as provided in Neb. Rev. Stat. § 42-925 (Reissue 1993), on July 14, 1998. Pursuant to § 42-925, Donlan had 5 days after receiving notice of the ex parte order in which to request a hearing on the matter.

A hearing was requested and was held on August 5, 1998. At the hearing, Hron testified that on July 12, 1998, she removed and threw away a folding chair belonging to Donlan, which was partially on the clinic property. The next day, July 13, Donlan

approached Hron regarding the chair, pointed his finger in her face, and stated, "[Y]ou're going to regret this." Donlan also told Hron that he was going to come to her house every week. Hron testified that approximately 8 to 9 months prior to the July 13 incident, she and Cheyenne, who was 4½ years old at the time, were approaching the clinic when Donlan began yelling at them. Donlan stated, "Cheyenne, do you know your mother kills little babies just like you?" Dr. Leroy Carhart, a doctor at the clinic, testified that he had heard Donlan address Cheyenne by name on many occasions, making similar statements. Hron testified that she felt threatened and harassed by these incidents and was concerned about allowing her daughter outside to play because Donlan said he would come to her house.

Donlan testified as to the events of July 12 and 13, 1998. Donlan claimed he did not intend to harass Hron, but that the purpose of his statements was to have his chair returned and to convince Hron that she should not be involved with a clinic that performs abortions. Donlan acknowledged that he had used Cheyenne "as a point," but denies addressing Cheyenne by name or making the specific statements that Hron claims Donlan made to Cheyenne. Donlan also testified that Hron did not appear frightened of him and that she often used expletives and obscene gestures toward him.

The court found in favor of Hron, determining that Donlan's statements constitute sufficient interference with Cheyenne's health and welfare to justify granting the protection order. The court then issued an order providing that the protection order was to remain in effect for 1 year from the date the initial ex parte order was granted. The protection order enjoined Donlan from imposing any restraint upon the person or liberty of Hron or Cheyenne, threatening or otherwise disturbing their peace, and telephoning, contacting, or otherwise communicating with them.

■ On August 11, 1998, Donlan filed a motion for new trial. In ruling on this motion, the court deleted paragraph 3 of the protection order, which enjoined Donlan from "telephoning, contacting, or otherwise communicating" with the Hrons, finding it was without authority to include this in its order under § 42-924, the version of the protection order statute in effect at the time the order was originally granted. An amendment to

§ 42-924, limiting its application to domestic abuse protection orders, became effective on July 15, 1998, 1 day after the protection order in this case was initially granted. A domestic abuse protection order applies when a "victim of domestic abuse" files for a protection order against a "household member," such as a relative, spouse, or former spouse. See Neb. Rev. Stat. §§ 42-903 and 42-924 (Reissue 1998). Effective July 15, 1998, § 42-924 no longer covers harassment protection orders such as the one involved in this case. The modified protection order enjoined Donlan from imposing any restraint upon the person or liberty of Hron or Cheyenne, and from threatening or otherwise disturbing their peace. After this modification, the court overruled Donlan's motion for new trial. Donlan then filed this appeal.

## ASSIGNMENT OF ERROR

Donlan claims, rephrased, that the trial court erred in granting the protection order because (1) § 42-924 (Supp. 1997) is unconstitutional on its face and as applied in this case and (2) the order was not sustained by sufficient evidence.

## STANDARD OF REVIEW

A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Id.* While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Id.* Thus, we must first determine whether the expiration of the protection order on July 14, 1999, has rendered this appeal moot.

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Id.*; *Putnam v.*

*Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999). A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Putnam, supra*. As a general rule, a moot case is subject to summary dismissal. *Id.*

The protection order in the present case expired on July 14, 1999. Once the order expired, Hron and Donlan were no longer affected by it, and the protection order issues before this court as they relate to Hron and Donlan became moot. See *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). Because of the 1-year timeframe for protection orders, such cases will almost always be moot by the time an appeal is heard. *Id.*

However, an appellate court may review an otherwise moot case if it involves a matter affecting the public interest, or when other rights or liabilities may be affected by its determination. *Id.* The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Greater Omaha Realty Co., supra*; *Putnam, supra*.

Although this case could implicate a matter of public interest, the First Amendment right of free speech, there is little need for an authoritative adjudication for future guidance of public officials. At the time of the issuance of the protection order in this case, § 42-924 (Supp. 1997) dealt with both harassment protection orders (any victim who has been harassed as defined by Neb. Rev. Stat. § 28-311.02 (Reissue 1993)), and domestic abuse protection orders (applies when abuse is among "household members"). Currently, § 42-924 (Reissue 1998) deals only with domestic abuse protection orders, while harassment protection orders are covered by Neb. Rev. Stat. § 28-311.09 (Reissue 1998). The current version of § 42-924 became effective July 15, 1998, 1 day after the protection order in this case was granted. Section 42-924 no longer deals with the type of protection order at issue in this case. An authoritative adjudication on the constitutionality of a statute that is no longer in effect is of little value for future guidance of public officials.

Furthermore, future recurrence of the issue presented in this case is not possible under the statute being challenged because harassment protection orders, such as the one involved in this case, are no longer covered under § 42-924. A decision regarding a version of a statute that is no longer in effect would be nothing more than an advisory opinion. For these reasons, the public interest exception does not apply in this case.

At oral argument, Donlan argued that the case is not moot because the issuance of the protection order would be a "stigma on his record." We have recognized that even when a sentence for a criminal conviction has already been fully served, an appeal from the conviction is not moot when the defendant is subjected to "collateral consequences" as a result of the criminal conviction. *State v. Patterson*, 237 Neb. 198, 204, 465 N.W.2d 743, 748 (1991). However, this exception to the mootness doctrine is inapplicable in the present case. Donlan, as stated by his attorney during oral argument, was never criminally convicted as a result of the issuance of the protection order and therefore cannot articulate any "collateral consequences" resulting from a criminal conviction that would cause him to "suffer future penalties or disabilities." See *id.* at 203, 465 N.W.2d at 747. Donlan's argument is without merit.

## CONCLUSION
Because we have concluded that this appeal is moot and that no exceptions to the mootness doctrine apply, including the public interest exception, the appeal is dismissed.

APPEAL DISMISSED.