DALE G. GERNSTEIN, APPELLANT, V.
ARTHUR ALLEN, APPELLEE.
630 N.W. 2d 672

Filed May 29, 2001. No. A-00-233.

John V. McNamara for appellant.

Ann M. Grottveit and Robert J. Becker, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellee.

HANNON, CARLSON and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Dale G. Gernstein appeals from an order of the district court for Douglas County, filed on January 25, 2000, which sustained Arthur Allen's motion for new trial on a judgment obtained by Gernstein. Allen sought a new trial on the harassment protection

order, which the court had granted Gernstein against Allen on December 2, 1999. For the reasons stated below, we affirm.

## BACKGROUND

On November 1, 1999, Gernstein filed a petition and affidavit to obtain a harassment protection order against Allen, his former business associate. Gernstein alleged threatening telephone calls by Allen to Gernstein on October 27 and 31 and a confrontation at Gernstein's residence on November 1, wherein Allen allegedly blocked Gernstein's vehicle in his driveway and jumped into the back of Gernstein's truck as Gernstein started to pull away. The court issued an ex parte protection order on November 1, and the matter was subsequently tried to the bench on December 2. Apparently, Allen also filed an application for a protection order against Gernstein, which was heard by the court on that date as well.

Gernstein appeared pro se at the December 2, 1999, hearing. Although Allen was represented by counsel, he was questioned by the court. Gernstein's testimony revealed that he had been working for Allen performing auto repossessions. Although the record is not entirely clear as to the reasons, Gernstein quit his job and severed any personal ties with Allen, apparently following a dispute concerning Allen's leaning on Gernstein's truck. Gernstein alleged that Allen called him on approximately Friday, October 23, to tell Gernstein to remove his personal property from Allen's office. Gernstein admitted, upon questioning by the court, that he removed his personal items from Allen's property without Allen's being present. In response to the court's questions about whether Gernstein had Allen's permission to enter his property, Gernstein responded that he "usually had access to the property."

Gernstein went on to indicate that he informed Allen that he would remove his property as soon as possible, that he went to the office on Monday morning during business hours when Allen's associates were present, and that he removed his personal property. The court then noted that Gernstein alleged the receipt of harassing telephone calls and death threats in his application for the harassment protection order, and questioned Allen in this regard. Allen indicated that he did contact

Gernstein after the removal of property from the office and that he was not " 'cussing & swearing' " at Gernstein or otherwise threatening him. Allen stated that he wanted Gernstein to retrieve a log splitter from Allen's cabin in Allen's presence and that he also contacted Gernstein with his concerns regarding a missing weapon. Allen testified that Gernstein subsequently went to Allen's cabin, cut the locks and chains on the gate, removed the log splitter, and made threatening statements to Allen. Allen initially denied contact with Gernstein after October 29, 1999, but when the court questioned him about the alleged November 1 incident, Allen indicated that he went to Gernstein's residence to confront Gernstein regarding the removal of property from Allen's cabin on that date. Allen testified that he got into the back of Gernstein's truck to "get a key out of it." The record is not absolutely clear whether Allen agreed with the court's statement that in order for Gernstein to remove Allen from the truck, Gernstein had to drive to the "Douglas County License office," or whether Allen was merely agreeing that he would be more responsive to the court's questions. The testimony on Gernstein's efforts to remove Allen from his truck was as follows:

"THE COURT: So you were in his truck, and, in order for him to get you out of the truck, he had to drive to the Douglas County License office, right? MR. ALLEN: The bed. . . . THE COURT: I understand that. MR ALLEN: Yes, sir." Allen was not allowed to elaborate on this issue, nor did Gernstein testify directly concerning the November 1, 1999, incident. Allen indicated, in response to further questions from the court, that he did not have permission to get into Gernstein's truck; that Gernstein threw a key at him, which went into the bed of Gernstein's truck; and that Allen then jumped in the truck bed to retrieve the key. At the end of the hearing, the court stated that it did not find probable cause to sustain a harassment protection order against Gernstein, but it did find probable cause to sustain the protection order against Allen by Gernstein.

Following the December 2, 1999, hearing, the court entered an order continuing the previously entered ex parte protection order against Allen until November 1, 2000, 1 year from the date of entry. Allen filed a motion for new trial-reconsideration on

December 9, 1999, asserting that the court's decision was not sustained by sufficient evidence and was contrary to law. The court conducted a hearing on Allen's motion on January 20, 2000. No evidence was presented at this hearing, but Allen's attorney argued that Allen was not able to present his entire case at the previous hearing and that there was not sufficient evidence to sustain the protection order against him. Allen's counsel did not mention, specifically, what evidence, if any, the court was unable to previously consider, but informed the court that Allen was a private investigator, and expressed concerns regarding the possible effect that the harassment protection order might have on Allen's private investigator's license. The court noted that the protection order would prevent Allen from possessing guns. Upon reviewing the transcript from the December 2, 1999, hearing, the court granted Allen's motion for new trial-reconsideration of the protection order. The court filed an order on January 25, 2000, sustaining Allen's motion for new trial-reconsideration and setting the matter for hearing. Gernstein subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Gernstein asserts that the district court erred in setting aside its previous order and ordering a new trial by applying the wrong scope of review and failing to consider the evidence which supported the court's original judgment in the light most favorable to Gernstein as the originally successful party.

## STANDARD OF REVIEW

■ A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000).

■ An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant

of a substantial right and denying just results in matters submitted for disposition. *Sharkey v. Board of Regents, supra.*

## ANALYSIS

*Mootness.*

■ In the present case, the protection order expired on November 1, 2000. Once the order expired, Gernstein and Allen were no longer affected by it, and the protection order issues before this court as they relate to Gernstein and Allen became moot. Appeals involving the granting of a protection order will almost always be moot before the case is heard because of the time-limited nature of a protection order. *Hauser v. Hauser, supra.* See, *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000); *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999).

■ However, under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Hauser v. Hauser, supra.* The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires a consideration of the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Hron v. Donlan, supra.*

■ At oral argument, Gernstein's counsel admitted that the expired protection order does not affect any other rights or liabilities of his client. Allen's counsel argued that the granting of the protection order is a "stigma" or "black mark" on Allen's record, which may subject him to future difficulties in his profession as a private investigator. The Nebraska Supreme Court has recognized that an appeal from a criminal conviction is not moot, even though a sentence for a criminal conviction has been fully served, when the defendant is subjected to "collateral consequences" resulting from the criminal conviction. *State v. Patterson*, 237 Neb. 198, 204, 465 N.W.2d 743, 748 (1991). The record is devoid of any evidence in the present case to show that Allen was criminally convicted of any crime resulting from the issuance of the protection order, or that any other rights or

liabilities were actually affected by its issuance. Accordingly, we find that this exception to the mootness doctrine is inapplicable in the present case. See, *Hauser v. Hauser, supra*; *Hron v. Donlan, supra*.

With regard to the public interest exception, the Nebraska Supreme Court in *Elstun v. Elstun, supra*, affirmed this court's determination that the case fell into the public interest exception to the mootness doctrine because the issue raised on appeal—the proper disposition of applications for protection orders—was a matter of public interest. Although the error assigned and the issues raised in the present appeal are not identical to those in *Elstun*, the parties essentially dispute whether the lower court properly disposed of Gernstein's application for a protection order against Allen. This case raises the issue of the duration of the protection order hearing and the ability of the litigants to present evidence, which we believe has significance beyond this particular case. Accordingly, we do find the public interest exception to the mootness doctrine applicable to the present case.

*Motion for New Trial.*

Gernstein asserts that the district court erred in setting aside its previous order and ordering a new trial by applying the wrong scope of review and failing to consider the evidence which supported the court's original judgment in the light most favorable to Gernstein as the originally successful party. Gernstein first argues that the proper scope of review by the district court in reviewing its own decision at a motion for new trial is that the factual findings, orders, and conclusions of the trial court have the effect of a jury verdict and will not be set aside unless clearly wrong. Gernstein cites *Wells Fargo Alarm Serv. v. Nox-Crete Chem.*, 229 Neb. 43, 424 N.W.2d 885 (1988), and *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989), in support of this proposition. The above cases do not stand for the proposition asserted by Gernstein in his brief with regard to the district court's consideration of a motion for new trial, nor do they reflect the standard of review applicable to our own appellate review of a ruling on a motion for new trial. Rather, they set forth the standard for appellate review of a lower court's judgment or verdict.

The correct standard of review, for this court's consideration of an appeal from a lower court's ruling on a motion for new trial, is that a motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000). Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2000) defines "new trial" and provides the grounds upon which a new trial may be obtained, as follows:

A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. The former verdict, report, or decision shall be vacated and a new trial granted on the application of the party aggrieved for any of the following causes affecting materially the substantial rights of such party: (1) Irregularity in the proceedings of the court, jury, referee, or prevailing party or any order of the court or referee or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise, which ordinary prudence could not have guarded against; (4) excessive damages, appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small, if the action is upon a contract or for the injury or detention of property; (6) that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law; (7) newly discovered evidence, material for the party applying, which the moving party could not, with reasonable diligence, have discovered and produced at the trial; and (8) error of law occurring at the trial and excepted to by the party making the application.

The purpose of a new trial motion is to give the trial court an opportunity after judgment to review and correct alleged errors in the previous proceedings. *Brandt v. Mayer*, 196 Neb. 751, 246 N.W.2d 203 (1976). The discretion of a trial court in ruling on a motion for new trial is only the power to apply the statutes and legal principles to all facts of the case; a new trial may be granted only where legal cause exists. *Nelson v. City of*

*Omaha,* 256 Neb. 303, 589 N.W.2d 522 (1999). A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Heye Farms, Inc. v. State,* 251 Neb. 639, 558 N.W.2d 306 (1997). The submission of an issue on which the evidence is insufficient to sustain an affirmative finding is generally prejudicial and results in a new trial. *Hoffart v. Hodge,* 5 Neb. App. 838, 567 N.W.2d 600 (1997).

In the present case, in his motion for new trial-reconsideration, Allen asserted that the court's decision, in granting the protection order against him, was not sustained by sufficient evidence and was contrary to law. Neb. Rev. Stat. § 28-311.02(2) (Cum. Supp. 2000) defines harassment as follows:

(a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose; and

(b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Gernstein alleges that Allen's counsel did not address the sufficiency of the evidence in arguments at the January 20, 2000, hearing, that counsel introduced a new issue in referring to potential problems the protection order might cause with Allen's private investigator's license, and that the court's decision was then based upon this "new evidence."

At the January 20, 2000, hearing, Allen's attorney noted that the previous hearing was held for approximately 10 minutes; alleged that during that hearing, Gernstein spoke at length regarding many issues not directly related to the protection order; and noted that in reviewing the transcript from the previous hearing, it appeared that the court had based its decision on the events of November 1, 1999. Allen's attorney did also advise the court that Allen was a private investigator and expressed concern that Allen may be prejudiced in the future due to the existence of the protection order. The court then requested to review the record of the December 2 hearing. After reviewing

the record, the court granted Allen's motion. We find nothing in the court's statements made at the close of the January 20, 2000, hearing or in its subsequent order granting Allen's motion to indicate that its decision was based on something other than its review of the actual record from the December 2, 1999, hearing. The court reviewed the record and evidently agreed with Allen's assertion that he had not been allowed ample time to present evidence at the previous hearing.

Upon our own review of the record, we agree that Allen was not given ample opportunity to present his side of the case and that the order of December 2, 1999, was not sustained by sufficient evidence. It is undisputed that a trial judge has broad discretion over the conduct of a trial. *Robison v. Madsen*, 246 Neb. 22, 516 N.W.2d 594 (1994). Neb. Rev. Stat. § 27-614(1) (Reissue 1995) gives judges the right to call witnesses, but it also gives parties the right to cross-examine such witnesses. *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). This discretionary power permits the trial court to bring out the true facts of the case, although the court must act impartially and not prejudice a party. *Scudder v. Haug*, 201 Neb. 107, 266 N.W.2d 232 (1978).

In the present case, the bill of exceptions from the December 2, 1999, hearing is 8½ pages in length. The first five pages of the bill of exceptions contain Gernstein's testimony regarding events prior to November 1. At that point in the hearing, the court noted that it "need[ed] [Gernstein] to get to the point" and that "[t]his is scheduled for 15 minutes. We've got four left." Gernstein himself never actually provided testimony concerning the November 1 incident, nor did the court inquire of Gernstein as to whether the allegations in his application for the protection order were accurate. The court addressed a few brief questions to Allen regarding the November 1 incident, specifically asking if Allen got into Gernstein's truck. The court did not inquire or allow Allen to fully explain the events on that day. The court clearly required short, succinct answers from Allen to bring the hearing to a close within the allotted timeframe. Allen was not allowed to provide any background information regarding the parties' relationship or his view as to how these events arose. Allen's response to the court's question about his removal from

Gernstein's truck was ambiguous, he denied blocking Gernstein's driveway, and he denied " 'cussing & swearing' " at Gernstein or making threats during previous telephone conversations. By questioning Allen, after cutting off Gernstein's rambling explanation of events, in a manner designed to conclude the hearing within the remaining 4 minutes of the allotted timeframe, the court limited its ability to bring out the true facts of the case. The court's actions also certainly chilled any attempts that Allen's attorney might have made toward that end, thus prejudicing Allen's ability to present his side of the November 1 events. We find that the trial court did not abuse its discretion in sustaining Allen's motion for new trial as the record from the December 2 hearing was insufficient to sustain the protection order against Allen. Accordingly, we affirm the trial court's decision to grant Allen's motion for new trial.

## CONCLUSION
The trial court did not abuse its discretion in sustaining Allen's motion for new trial as the protection order against him was not sustained by sufficient evidence. Accordingly, we affirm the trial court's decision to grant Allen's motion for new trial.

AFFIRMED.