137 N.W.2d 721 (1965). It failed to do so. The NRD's arguments that it negotiated in good faith are without merit.

## CONCLUSION

We affirm the district court's conclusion that the NRD failed to show that it made a reasonable attempt to induce the Camdens to accept its offer to acquire an easement.

AFFIRMED.

———————

DEBORAH ANN YANCER, APPELLEE, V.
MICHAEL KAUFMAN, APPELLANT.

___ N.W.2d ___

Filed September 2, 2014.    No. A-13-214.

1. **Moot Question: Jurisdiction: Appeal and Error.** Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, appellate courts review mootness determinations under the same standard of review as other jurisdictional questions.

2. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Courts: Jurisdiction.** While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power.

5. **Moot Question.** A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation.

6. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

7. **Moot Question: Time: Appeal and Error.** Appeals involving the granting of a protection order will almost always be moot before the case is heard because of the time-limited nature of a protection order.

8. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.

9. ____: ____. In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

10. ____: ____. The public interest exception to the mootness doctrine applies where the activity sought to be prohibited is of a public nature.

11. **Judgments.** The proper disposition of applications for protection orders is a matter affecting public interest.

12. **Moot Question: Judgments: Appeal and Error.** The other rights or liabilities exception to the mootness doctrine is inapplicable absent proof of collateral consequences resulting from the issuance of a protection order.

Appeal from the District Court for Lancaster County: GALE POKORNY, County Judge. Appeal dismissed.

Tregg Lunn, of Law Office of Tregg Lunn, for appellant.

Kristina M. Morris, of Bowman & Krieger, for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Michael Kaufman appeals from an order of the district court for Lancaster County granting Deborah Ann Yancer a harassment protection order against him. Because we find that the protection order has, by its terms, expired, and because we find no reason to apply an exception to the mootness doctrine, the appeal is dismissed as moot.

## BACKGROUND

On January 18, 2013, Yancer filed a petition and affidavit to obtain a harassment protection order against Kaufman. Yancer alleged in the petition that despite repeated requests that Kaufman stop, he continued to send her letters, e-mails, and text messages. In December 2012, she contacted an attorney who sent Kaufman a cease and desist letter. Kaufman continued to contact her, and according to the petition and its attachments, the continued contact caused Yancer to fear for her safety.

On January 18, 2013, the court entered an ex parte harassment protection order, pursuant to Neb. Rev. Stat.

§ 28-311.09 (Cum. Supp. 2012). The court specified that based on § 28-311.09, the protection order was to remain in effect for a period of 1 year unless modified by order of the court.

On January 25, 2013, Kaufman filed a request for hearing, which request was granted. A hearing was scheduled for February 13. Kaufman testified that the week before the hearing, he contacted the clerk's office and requested that the hearing be postponed because his witness was unavailable, but his request was denied. The transcript reveals that a letter dated February 11, 2013, was filed with the court requesting a continuance of the February 13 hearing and that the continuance request was denied on the date it was received.

Yancer appeared with counsel at the hearing, and Kaufman appeared pro se. Yancer testified that she had been in a romantic relationship with Kaufman, but that she had ended it on August 22, 2012. After the breakup, Kaufman continued to contact her through various means. According to Yancer, some of the communications were "sexually explicit" and it made her feel "very frightened." While most of the letters were mailed to her, she received a particular letter which she described as "very upsetting" because it was "sexually explicit and very detailed." She also explained that Kaufman personally, or someone acting on his behalf, had entered her property, come to her front door, opened the mailbox contained in her front door, and slid the detailed and sexually explicit letter inside her home. All of this happened sometime in the dark, during night hours. As a result, Yancer hired an attorney to send Kaufman a cease and desist letter. Kaufman continued to send communications, including letters and poems, which prompted Yancer to file the petition for a protection order.

At trial, Yancer's attorney offered the petition and affidavit, but the court refused the offer, stating that it would take judicial notice of them. Yancer's counsel questioned Yancer about each of the documents to which she had referred in her petition, and Kaufman was given an opportunity to cross-examine her.

Kaufman testified that he had "incurred considerable expenses as a result of [his] relationship with . . . Yancer"

and that he believed he was entitled to "some form of restitution for the work" he did for her. In an attempt to substantiate his claim, he submitted a spreadsheet of time and labor he expended on Yancer's home, which the court marked but never specifically received. Kaufman also submitted a spreadsheet of funds he expended on Yancer, which the court once again marked, but did not specifically receive. Kaufmann also submitted a letter from his unavailable witness, which the court agreed to "look at" without explicitly receiving it.

The court allowed Kaufman to deliver a narrative regarding his relationship with Yancer. In the end, the court stated that it was going to continue the protection order on the basis that Yancer said Kaufman was disturbing her peace and quiet, and the court agreed. The protection order was extended 1 year from January 18, 2013. Kaufman timely filed this appeal.

## ASSIGNMENTS OF ERROR

Kaufman assigns that the district court erred in granting Yancer's request for a protection order because the evidence was insufficient and because he was denied his due process rights, his right to an impartial judge, and his right to call a nonparty witness.

## STANDARD OF REVIEW

[1,2] Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions. *State v. York*, 278 Neb. 306, 770 N.W.2d 614 (2009). A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Id*.

## ANALYSIS

[3,4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000).

While it is not a constitutional prerequisite for jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Id*. Thus, we must first determine whether the expiration of the protection order, which expired by its own terms on January 18, 2014, has rendered this appeal moot.

[5,6] A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Id*. A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999). As a general rule, a moot case is subject to summary dismissal. *Id*.

[7,8] The protection order in the present case was entered on January 18, 2013, and by its own terms was effective until January 18, 2014. Because the protection order in this case has expired, the instant appeal is moot. Appeals involving the granting of a protection order will almost always be moot before the case is heard because of the time-limited nature of a protection order. *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000). However, it has been recognized that under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Id*.

[9] In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000).

The dissent suggests that the court made "at least two errors" that should be addressed under the public interest exception: "(1) an error of law with regard to the harassment protection order statutes and (2) an evidentiary error." We note that Kaufman does not raise the first basis as an assigned error. Moreover, we fail to see how either alleged error rises to the

level of public interest so as to merit consideration under the exception. Rather, at best, we are presented with an isolated misinterpretation of the harassment statute and evidentiary errors committed by a single judge.

[10] A review of cases in which the Nebraska Supreme Court has applied the public interest exception leads us to the conclusion that the exception applies where the activity sought to be prohibited is of a public nature. See, e.g., *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009); *In re Interest of Anaya*, 276 Neb. 825, 758 N.W.2d 10 (2008).

*Evertson v. City of Kimball, supra*, was a mandamus action in which citizens sought to compel the City of Kimball to disclose an investigative report on racial profiling by police. The district court ordered the city to produce the report and also attached a redacted copy to its order. On appeal, the appellees contended the appeal was moot because of the court's disclosure. The Nebraska Supreme Court held that although the appeal was moot, the public interest doctrine applied because the court could foresee a public body hiring a private investigator to conduct an internal investigation of its officials to eliminate the appearance of impartiality and the courts and public bodies would find guidance from a review of the issues.

In *In re Interest of Anaya, supra*, the parents of a newborn infant objected to a State-required blood screening for their son. Based upon their refusal, the State filed a petition for adjudication, and the child was removed from his parents' home. See Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013). He was ultimately tested and returned to his parents. The parents filed suit, claiming that the screening statutes were unconstitutional and that the evidence was insufficient to adjudicate the child. The court determined the case was moot because the screening had been performed and the adjudication petition had been dismissed. It proceeded to consider the appeal, however, under the public interest exception. In deciding to do so, the court stated:

> The validity of the newborn screening statutes and the proper statutory method of enforcing the statutes fall squarely within the public interest. Resolution of these

issues involves the health and welfare of all children born in the state, an issue of paramount importance to the citizens of this state. Furthermore, this court's resolution of the constitutional and statutory issues in this case will provide guidance for state officials and the juvenile courts on the validity of the newborn screening statutes and the proper method of enforcing these statutes. Finally, the appellants in this case are of childbearing age, so the issues presented in this appeal are capable of recurring in the future, and in addition, similar cases are likely to arise.

*In re Interest of Anaya*, 276 Neb. at 832, 758 N.W.2d at 17.

[11] In the present action, Yancer sought to prevent her jilted paramour from making continued contact with her. We are unable to equate the public's interest in such a situation to that of the parties' activities in *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009), and *In re Interest of Anaya*, 276 Neb. 825, 758 N.W.2d 10 (2008), that gave rise to the application of the public interest exception. Even if we consider the "proper disposition of applications for protection orders" as a matter affecting public interest, as did the Nebraska Supreme Court in *Elstun v. Elstun*, 257 Neb. 820, 824, 600 N.W.2d 835, 839 (1999), we fail to see how the remaining two factors, desirability of an authoritative adjudication for future guidance of public officials and the likelihood of future recurrence of the same or a similar problem, are met. The dissent ignores the second consideration, the desirability of an authoritative adjudication for future guidance of public officials. Our review of Nebraska case law indicates that while it may have been error for the trial court to take judicial notice of the petition and affidavit, this does not require us to invoke the public interest exception because it would not provide any future guidance for public officials beyond that which the appellate courts have already provided in similar situations. See, *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010); *Hronek v. Brosnan*, 20 Neb. App. 200, 823 N.W.2d 204 (2012) (providing authoritative guidance on court's inability to take judicial notice of protection order and supporting affidavit); *Sherman v. Sherman*, 18 Neb. App. 342,

781 N.W.2d 615 (2010). The same is true for the trial court's failure to specifically rule on exhibits offered by the parties. See, e.g., *Mahmood v. Mahmud, supra*; *Sherman v. Sherman, supra* (stating that documents must be admitted into evidence at contested factual hearings in protection order proceedings to be considered by court). Nor do we find that addressing the judge's misinterpretation of the harassment statutes would provide future guidance on a problem likely to reoccur, given the plain and unambiguous nature of the statute itself. See, *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014) (applying public interest exception because question present involved area of law that had not yet been developed); *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011) (applying exception because previous appellate cases have questioned juvenile court's authority of issue presented, but issue had evaded review).

If every error committed by a trial judge called into play the public interest exception, the mootness doctrine would be subsumed by the exception. Therefore, we decline to address the merits of this case under that exception.

The dissent goes on to further suggest "[f]or the sake of completeness" that "other rights or liabilities may be affected by the case's determination." The dissent ponders that when

> our review of a protection order appeal reveals errors or deficiencies in the record that warrant reversal and vacation of the protection order, having such an order vacated should qualify as a "right" belonging to the respondent that should invoke this other exception to the mootness doctrine.

But then the dissent changes course, claiming that

> the other rights or liabilities exception has not been examined by the Nebraska Supreme Court in this specific context, and an analysis of this other exception is unnecessary to the resolution of the appeal before us currently, since the public interest exception can be invoked instead.

[12] Nebraska jurisprudence reveals that the Nebraska Supreme Court has clearly rejected application of the other rights or liabilities exception absent proof of collateral

consequences resulting from the issuance of the protection order. See, *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000); *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000); *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991). This court has followed suit. See *Gernstein v. Allen*, 10 Neb. App. 214, 630 N.W.2d 672 (2001). The dissent identifies no right of Kaufman that has been or may be affected by this protection order sufficient to bring it within the mootness exception for other rights or liabilities affected by the case's determination.

Because Kaufman does not allege any reasons which would justify the application of any exception to the mootness doctrine, nor is there any indication in the record that any exception should be invoked under the circumstances of this case, we decline to do so.

## CONCLUSION

Because we have concluded that this appeal is moot and that no exceptions to the mootness doctrine apply, the appeal is dismissed.

APPEAL DISMISSED.

BISHOP, Judge, dissenting.

By no fault of Kaufman, his appellate review of the harassment protection order entered against him did not reach this court until more than 1 year after its entry. The majority has concluded that since the protection order expired by its own terms on January 18, 2014, the appeal should be dismissed as moot.

Citing to *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000), the majority acknowledges that appeals involving the granting of a protection order will almost always be moot before the case is heard, because of the time-limited nature of a protection order, but that under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. The *Hron* decision tells us that in determining whether the public interest exception should be invoked, the court considers the public or private nature

of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. In considering those factors, the majority concludes that "Kaufman does not allege any reasons which would justify the application of any exception to the mootness doctrine, nor is there any indication in the record that any exception should be invoked under the circumstances of this case." I respectfully conclude otherwise.

In support of a public interest exception to the mootness doctrine, there are at least two errors made by the court that are more public than private in nature, and may result in a future recurrence of the same or a similar problem if not addressed: (1) an error of law with regard to the harassment protection order statutes and (2) an evidentiary error.

*Requirements for Harassment
Protection Order.*

The court erred in its interpretation and application of the harassment protection order statutes, concluding that evidence of threatening behavior was not necessary to the issuance of a harassment protection order. In fact, the court specifically told Kaufman that the harassment statute did not require evidence of threatening or dangerous behavior, only that the behavior is harassing and annoying. The court also later indicated that Kaufman had disturbed Yancer's "peace and quiet" and, in making that finding, entered the order. This is not consistent with the law and is not an error personal to Kaufman. There is clearly a public interest in making sure trial courts are applying the law correctly to the evidence before them.

A person filing a petition for a harassment protection order (the petitioner) has the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Neb. Rev. Stat. § 28-311.09(1) (Cum. Supp. 2012) states in part: "Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order as provided in subsection (3) of this section."

"Harass" is defined at Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008) as follows: "Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." And a "course of conduct" is defined at § 28-311.02(2)(b):

> Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Based on the plain reading of these statutes, a harassment protection order should only issue against the perpetrator of such actions (the respondent) when a preponderance of the evidence establishes that the respondent engaged in a knowing and willful course of conduct directed at a specific person which *seriously terrifies, threatens, or intimidates that person* and which serves no legitimate purpose. Furthermore, when analyzing § 28-311.02, the Nebraska Supreme Court has concluded that Nebraska's stalking and harassment statutes are given an objective construction and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id*.

In the case before us, Kaufman conceded that he likely engaged in a course of conduct, that he did send Yancer "a few letters and poems," but that "[i]n all of [his] communications to her, [he had] never said anything threatening." As noted earlier, the county court judge mistakenly informed Kaufman that the statute did not require proof of threatening behavior. When Kaufman, who appeared pro se, was given an opportunity to question Yancer about one of her allegations, the following exchange took place:

> [Kaufman:] Debbie, what have I done to make you feel threatened?

THE COURT: Are you talking about this January 7 letter? We're talking about threatened, the statute doesn't talk about — doesn't necessitate threaten or danger, it says harass and annoy.

[Kaufman:] Your Honor, I do have the statute, I don't know if I need to review it with you, or —

THE COURT: I've got the statute, too . . . . Now ask her about the January 7 letter or [the attorney's] letter to you.

After Kaufman indicated that he did not have questions specific to the attorney's letter or the e-mail the court was referring to, the county court judge proceeded to read the next allegation in the petition regarding some poetry sent by Kaufman to Yancer. At the conclusion of the hearing, the county court judge stated, "Nobody said violence was a necessary part of it. She says you're disturbing her peace and quiet, and I believe you are. I'm going to sign this protection order."

Evidence of a respondent engaging in annoying behavior, or otherwise disturbing a petitioner's peace and quiet, does not satisfy the requirements of the harassment protection order statutes which seek to protect against behaviors that seriously terrify, threaten, or intimidate. If the court is under the mistaken impression that something less than "seriously terrifie[d], threaten[ed], or intimidate[d]" is sufficient for the entry of a harassment protection order, then this is a problem capable of recurrence with persons other than Kaufman, and accordingly, the appeal warranted consideration under a public interest exception to the mootness doctrine. As noted in *Elstun v. Elstun*, 257 Neb. 820, 824, 600 N.W.2d 835, 839 (1999), "[T]he proper disposition of applications for protection orders . . . is a matter affecting the public interest."

*Court's Refusal to Receive*
*Documentary Evidence.*

Another error committed by the court affecting the proper disposition of applications for protection orders that supports a public interest exception to the mootness doctrine was the court's refusal to receive documentary evidence when offered by both parties. In addition to refusing other offered evidence,

the court specifically refused to receive Yancer's petition and affidavit, and announced that it would take judicial notice of those documents instead. The following colloquy took place:

> [Yancer's counsel:] Your Honor, I'd like to offer a copy of the Petition and affidavit in full, as an exhibit to this Court, and then I have one additional exhibit I'd like to discuss at this time, since it's an additional contact since the time of —
>
> THE COURT: We're not going to do that. Somebody has alleged three different things, and we start talking . . . . It is my policy to say that she laid down three different things, and that's what we're here talking about. If we start throwing out different events or occurrences of discourse, we'll be here all day.
>
> [Yancer's counsel:] Okay, Your Honor. I just want to make sure that —
>
> THE COURT: You don't need to offer the petition. I'll take judicial notice of it; I'm reading it.

The court erred in concluding that it could consider the petition and affidavit via judicial notice. In *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010), this court considered the sufficiency of the evidence in a harassment protection order case, and like this case, the petitioner's petition and affidavit were not received as evidence at trial. Also like this case, the trial court in *Sherman* attempted to take judicial notice of the allegations contained in the petition and affidavit. We noted that "a court may not take judicial notice of disputed facts," and therefore "the allegations contained in [the petitioner's] petition and affidavit were not evidence upon which the court could base its findings and were not properly considered by the court in making its determination." *Id.* at 348, 349, 781 N.W.2d at 621.

Similarly in this case, the court's refusal to receive the petition and affidavit precluded it from considering anything contained in those documents. The only evidence before the court was the information revealed through the testimony of Yancer and Kaufman. As noted by the majority, that testimony revealed that Yancer and Kaufman had been in a romantic relationship, and after the breakup, Kaufman continued to

communicate with Yancer through letters and poems despite a cease and desist letter sent to Kaufman by Yancer's attorney. None of these documents were received as evidence, and the parties' testimony about them failed to reveal anything seriously terrifying, threatening, or intimidating by Kaufman toward Yancer.

Accordingly, in my opinion, we should reach the merits of this appeal under the public interest exception to the mootness doctrine, and because I conclude the law was not correctly applied and the evidence was insufficient to support the entry of a harassment protection order based on the plain language of the statute, I would have reversed the order and remanded the matter with directions to vacate the protection order.

For the sake of completeness, I would further note that *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000), indicates that in addition to the public interest exception to the mootness doctrine, under certain circumstances, an appellate court may also entertain the issues presented by a moot case when "other rights or liabilities may be affected by the case's determination." The majority states that *Hron v. Donlan, supra*, establishes that "the Nebraska Supreme Court has clearly rejected application of the other rights or liabilities exception absent proof of collateral consequences resulting from the issuance of the protection order." However, in addressing the mootness issue as related to the respondent's "stigma" argument in the *Hron* case, the *Hron* court "recognized that even when a sentence for a criminal conviction has already been fully served, an appeal from the conviction is not moot when the defendant is subjected to 'collateral consequences' as a result of the criminal conviction." 259 Neb. at 264, 609 N.W.2d at 384. The *Hron* court then goes on to state that "this exception to the mootness doctrine is inapplicable in the present case," because the respondent "was never criminally convicted as a result of the issuance of the protection order and therefore cannot articulate any 'collateral consequences' resulting from a criminal conviction that would cause him to 'suffer future penalties or disabilities.'" *Id*. I do not read *Hron* to mean that in every protection order case, a respondent must prove that a conviction resulted from the issuance of a protection order

before a court can consider whether "other rights or liabilities may be affected by the case's determination." In my opinion, when our review of a protection order appeal reveals errors or deficiencies in the record that warrant reversal and vacation of the protection order, having such an order vacated should qualify as a "right" belonging to the respondent that should invoke this other exception to the mootness doctrine. However, the other rights or liabilities exception has not been examined by the Nebraska Supreme Court in this specific context, and an analysis of this other exception is unnecessary to the resolution of the appeal before us currently, since the public interest exception can be invoked instead.

---

Troy Bird, appellee, v.
Brekk Bird, appellant.
___ N.W.2d ___

Filed September 2, 2014.    No. A-13-912.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.
2. **Evidence: Appeal and Error.** When evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.
4. **Modification of Decree: Child Custody: Proof.** The party seeking modification of child custody bears the burden of showing a material change of circumstances affecting the best interests of a child.
5. **Child Custody.** In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must also demonstrate that it is in the child's best interests to continue living with him or her in the new location.
6. **Child Custody: Intent.** When a parent sharing joint legal and physical custody seeks to modify custody and relocate, that parent must first prove a material change in circumstances affecting the best interests of a child by evidence of a legitimate reason to leave the state, together with an expressed intention to do so.