IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

S.P. V. WELLS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

S.P., APPELLEE,

V.

CLIFTON WELLS, APPELLANT.

Filed November 17, 2015.    No. A-14-917.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Appeal dismissed.

William R. Harris for appellant.

No appearance for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PER CURIAM.

Clifton Wells appeals from an order of the district court for Douglas County granting S.P. a harassment protection order against him. We find that the protection order has, by its terms, expired and become moot, and therefore dismiss the appeal.

BACKGROUND

S.P. filed a "Petition and Affidavit to Obtain Harassment Protection Order" with the district court for Douglas County on August 4, 2014, naming Wells as the respondent. The affidavit sets forth that S.P. gave a statement to an investigator on July 30. S.P. then describes a meeting (no date provided) between her family and the church minister (no name was provided in the affidavit; we can only assume that Wells is the church minister because that is who S.P. named as the respondent). Upon her exit from the minister's office, S.P. states that "he grabbed my butt," and this made her "uncomfortable around him and angry that he had violated me and the Church by

- 1 -

touching me on my body inappropriately." S.P. further indicated that she was afraid the minister would retaliate because she had given a statement to the police. An ex parte harassment protection order was signed on August 4, and file stamped on August 5; it advised that a request for hearing had to be returned to the clerk of the district court within 5 days after service. The service return indicates that Wells was personally served on August 7. Wells' request for hearing was not filed until August 13; and because the request was received after 5 days from the date of service, no hearing was scheduled. On September 8, Wells filed an affidavit indicating that (1) he was served with the petition and affidavit on August 7; (2) his mother-in-law suffered a heart attack and he had been at the hospital daily; and (3) he mistakenly thought he had until August 13 to file his request for hearing. A hearing took place on October 3; S.P. and Wells were present, along with Wells' attorney. The court first took up Wells' motion to request a hearing out of time. Although initially denying the request, after further discussion, the district court granted the request and allowed the matter to proceed to hearing on the protection order.

The court called S.P. to the stand and proceeded to question her about the petition she filed against Wells. The court asked S.P., "[D]o you stand by the statements you made in your petition that you filed." S.P. replied, "Yes." After indicating that she knew Wells because he was her evangelist pastor at the church she attended, S.P. testified as to why she sought the protection order, stating:

> Because while I was at the church I felt uncomfortable being around him and the way he would look at me and provocatively and touch me, like, inappropriately. I felt uncomfortable. And when I was able to leave the church I left the church, and now that this is coming out I feel like I'm not safe and I feel uncomfortable and I would feel more -- I will feel more safe if I were to have this protection order.

The court then questioned S.P. as follows:

> [The court:] . . . You state in your application for the protection order that on or about July 30th of 2014 he touched you on your buttocks; is that true?
> [S.P.:] Uh-huh. Yes.
> [The court:] Is that a yes?
> [S.P:] Yes, it is.
> [The court:] Okay. And did you find that to be offensive?
> [S.P.:] Yes, I did.
> [The court:] And did you find that that touching of you by him disturbed your peace?
> [S.P.:] Yes, it did.
> [The court:] Has he done anything else like that to you?
> [S.P.:] It was like it wasn't so far to the butt, but it was close enough, like on my waist, and it was inappropriately [sic] for me and uncomfortable.
> [The court:] And when did he do that?
> [S.P.:] Like, during church services.
> [The court:] What was the approximate date that he did that?

[S.P.:] It was between -- well, when I was around 16 and 18 attending church. I don't have an approximate.

[The court:] How old are you now?

[S.P.:] I'm 19.

[The court:] Okay. You gave -- you talked to the police about this?

[S.P.:] No. Just the investigators.

[The court:] Well, you talked to police officers --

[S.P.:] Yeah.

[The court:] -- about it --

[S.P.:] I guess so.

[The court:] -- is that right? Okay. And you state in your application that you're afraid that he might do something in retaliation because you reported this?

[S.P.:] Yes.

The court then turned the questioning over to Wells' attorney for cross-examination, who asked whether the alleged incident occurred over three years ago when S.P. was 16 years old. S.P. replied, "Between 16 and 18." When asked why she waited three years to file a protection order, S.P. replied, "Because when I was at the church I was with my mom and she made me go to church. So after I was able to leave, I left and I left it alone. But now that it's being blown up I feel like it's --[.]" At that point she was interrupted by Wells' attorney and he proceeded to elicit testimony from S.P. indicating that she had not "been to church since [she] was 18, which [was] a year ago"; that Wells "touched [her] butt" when she was 18; that at every church service "we shake hands and it's, like, I would get grabbed, like, around my waist or somewhere I don't feel comfortable"; that she attended church every Sunday; that she waited until now to file the protection order "[b]ecause now that I see that he's doing it to my little cousin, I don't know who else he's done it to"; that Wells tried to add S.P. on Facebook; that Wells called S.P. within the last year (although S.P. could not remember the exact date) and that she only spoke with Wells because her mother gave her the phone.

After Wells' attorney concluded his questioning of S.P., the court asked S.P. to explain further about S.P.'s Facebook comment. S.P. claimed that Wells sent her a friend request on Facebook, but that she "didn't accept the request because [she] didn't feel like [her] pastor evangelist should be [her] friend on Facebook. That's a social network." This occurred "a little bit before August" of 2014. The court further inquired about the phone conversation between S.P. and Wells, to which S.P. responded, "I can't quite remember the conversation because I really wasn't interested in it, honestly."

Wells then testified that he was a retired firefighter and was the presiding pastor of his church. Wells stated that he met S.P. 2½ years ago when S.P. came to church with her mother. Wells said that in July 2014, S.P.'s mother told him that S.P. said Wells had touched her. Wells told S.P.'s mother, "I wouldn't do that to your daughter," and "[t]hat was the first time I heard anything in two and a half years that I allegedly touched her." Wells further testified that he had seen S.P. only two times in the last six months, once when S.P.'s grandmother was sick at the hospital and Wells was asked to come to anoint and pray for her, and the other time was when

S.P.'s parents invited him to their house for a taco dinner. Wells claimed he did not have S.P.'s telephone number, that S.P. is "not my Facebook friend," and that he never attempted to Facebook her or anyone else.

The court then asked S.P. if she had any evidence to rebut what Wells had said; S.P. indicated she had the Facebook request. Over counsel's objection, the court allowed S.P. to show the court her phone. S.P. stated that the phone indicated that Wells sent her a friend request, and although no date was indicated, she said it was "around July and August." Wells' attorney disputed that it was a friend request, and argued that it was a suggested friend, which was due to S.P. and Wells having mutual friends. Neither the phone, nor any photos of what was viewed by the court, were offered into evidence.

From the bench, the court found that

there's sufficient evidence that the protection order in this matter should be entered and that the ex parte harassment protection order entered August 4, 2014, shall be extended for a period of one year from that date, or until August 4th of 2015, during which time [Wells] is enjoined from imposing any restraint on the person or liberty of [S.P.], from harassing, threatening, assaulting, molesting, attacking or otherwise disturbing her peace, or from telephoning, contacting or otherwise communicating with her in any way.

A form "Harassment Protection Order" was filled out indicating that the August 4, 2014, harassment protection order would remain in effect for one year from the date of the original order. The order was signed by the court on October 3, 2014, and file stamped on October 6. Wells timely appealed from that order.

## ASSIGNMENTS OF ERROR

Wells assigns that the district court erred (1) by acting as an advocate for S.P.; and (2) in concluding there was sufficient evidence to enter a harassment protection order.

## STANDARD OF REVIEW

A protection order is analogous to an injunction; the grant or denial of a protection order is reviewed de novo on the record. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010).

Mootness does not prevent appellate jurisdiction. But, because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, we have reviewed mootness determinations under the same standard of review as other jurisdictional questions. A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State v. York*, 278 Neb. 306, 770 N.W.2d 614 (2009); *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000). While it is not a constitutional prerequisite for

jurisdiction, the existence of an actual case or controversy is necessary for the exercise of judicial power. *Id.*

A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Greater Omaha Realty Co. v. City of Omaha*, *supra.* A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Putnam v. Fortenberry*, 256 Neb. 266, 589 N.W.2d 838 (1999). As a general rule, a moot case is subject to summary dismissal. *Id.*

The harassment protection order in the present case was entered on August 4, 2014, and by its own terms was effective until August 4, 2015. Because the protection order in this case has expired, the instant appeal is moot. Appeals involving the granting of a protection order will almost always be moot before the case is heard because of the time-limited nature of a protection order. *Hron v. Donlan*, 259 Neb. 259, 609 N.W.2d 379 (2000). However, it has been recognized that under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination. *Id.*

In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem. *Hron v. Donlan, supra.* In the present case, the district court entered a harassment protection order based on evidence of offensive conduct which S.P. claimed disturbed her peace. Although a harassment protection order should only issue when there is a "knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person," Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008), we cannot say that the district court's misinterpretation of the harassment statute rises to the level of public interest warranting an exception to the mootness doctrine. "If every error committed by a trial judge called into play the public interest exception, the mootness doctrine would be subsumed by the exception." *Yancer v. Kaufman*, 22 Neb. App. 320, 327, 854 N.W.2d 640, 646 (2014).

With regard to whether other rights or liabilities may be affected by the case's determination, the record is devoid of evidence to support consideration under this exception to the mootness doctrine. Our Supreme Court held in *Hauser v. Hauser*, 259 Neb. 653, 611 N.W.2d 840 (2000), that even when the defending party alleges that the protection order may cause that person to be subject to certain employment ramifications or that he may also face future criminal prosecutions, an exception to the mootness doctrine is not justified if the record is devoid of evidence to show a criminal conviction resulting from the issuance of a protection order, or that any other rights or liabilities were actually affected by issuance of the protection order. Similarly here, the record is lacking any such evidence. Accordingly, we decline to address the merits of this case under any exception to the mootness doctrine.

CONCLUSION

Because we have concluded this appeal is moot, and that no exceptions to the mootness doctrine apply, the appeal is dismissed.

APPEAL DISMISSED.

BISHOP, Judge, dissenting.

It seems inherently unjust to me that we dismiss an appeal because it has become moot due to the passage of time in the appeals process--a circumstance, generally speaking, beyond the control of the appealing party. Similar to the circumstances in *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014), by no fault of Wells in the instant case, his appellate review of the harassment protection order entered against him did not reach this court until more than 1 year after its entry. The majority has concluded that since the protection order expired by its own terms on August 4, 2015, the appeal should be dismissed as moot. I would apply an exception to the mootness doctrine to allow us to get to the merits of the present appeal. As I discussed in my dissent in *Yancer*, *supra*, if Nebraska trial courts are "under the mistaken impression that something less than 'seriously terrifie[d], threaten[ed], or intimidate[d]' is sufficient for the entry of a harassment protection order, then this is a problem capable of recurrence," which warrants consideration under an exception to the mootness doctrine. *Id.* at Neb. App. 331, 854 N.W.2d at 649.

The only evidence in the record before us is derived from the testimony of the parties as set forth in the background section of this opinion. The petition and affidavit were not offered and received into evidence. Neither S.P.'s phone, nor photographs of the phone screens reviewed by the district court related to the Facebook friend request/suggestion, were entered into evidence. In fact, no exhibits were offered. The only evidence came from the testimony of S.P. and Wells. And that testimony does not establish that Wells engaged in a knowing and willful course of conduct directed at S.P. which seriously terrified, threatened, or intimidated her. While S.P.'s testimony suggested concern for a cousin, there was simply no evidence of any conduct by Wells towards S.P. that would cause a reasonable person to feel seriously terrified, threatened, or intimidated. See *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007) (Nebraska's stalking and harassment statutes are given an objective construction and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis). This is not to say that Wells' alleged past conduct was not offensive or inappropriate; however, to support a harassment protection order, the law requires evidence of a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates that person. See Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008).

The district court did not set forth any findings to support its decision to enter a protection order. Rather, the court appeared to inquire only as to whether Wells' alleged conduct was offensive and disturbed S.P.'s peace; and then stated from the bench that there was sufficient evidence to enter a protection order. Because there was no evidence that Wells engaged in a knowing and willful course of conduct directed at S.P. which seriously terrified, threatened, or intimidated her, I would have reversed the district court's order and remanded with directions to vacate the protection order.